[Civ. No. 1355. Third Appellate District.—May 6, 1915.]

PHILIP W. TOMPKINS, Appellant, v. BERNHARD DAVIDOW, Respondent.

VENDOR AND PURCHASER—MUTUAL TERMINATION OF CONTRACT BY KNOWN PARTIES—RECOVERY OF DEPOSIT BY UNKNOWN INTERESTED PURCHASERS.—Where in an action brought to recover the deposit paid upon a contract for the sale and purchase of real estate it is shown by the acts and declarations of the vendor and the person whom the agents of the vendor led the latter to believe was the only interested purchaser, that the vendor and such person had mutually terminated their respective obligations under the contract and released each other therefrom in consideration of the retention of the deposit by the vendor, the intent of said parties cannot be defeated by allowing parties never known by the vendor to have had any interest in the contract to come in nearly four years thereafter and seek recovery of the deposit on the theory that it was their money and not the money of the person represented to the vendor as the real and only purchaser.

ID.—MUTUAL ABANDONMENT OF CONTRACT—ORAL AGREEMENT.—A contract can be mutually abandoned by the parties at any stage of their performance and each of the parties released from any further obligation on account thereof, and such abandonment may be done by parol and the fact of its having been done established by evidence of the acts and declarations of the parties.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. James W. Bartlett, Judge presiding. .

The facts are stated in the opinion of the court.

Alexander D. Keyes, for Appellant.

Walter H. Robinson, and Marcus Rosenthal, for Respondent.

CHIPMAN, P. J.—Plaintiff brought the action, in his own behalf and as assignee of other parties, to recover five thousand dollars paid as a deposit upon a contract for the sale and purchase of certain real estate situated on Bryant Street near Fifth Street in San Francisco. The cause was tried by the court without a jury and defendant had judgment, from

which and from the order denying his motion for a new trial plaintiff appeals.

The transaction shown by the findings of the court was as follows: On March 28, 1906, defendant employed George C. Boardman, Jr., and T. D. Boardman, copartners as Boardman Brothers Co., engaged in business as real estate agents, "as his agents to procure for him a purchaser for the real property hereafter described, for an agreed compensation, and they thereupon accepted such employment"; that, on said last named date, pursuant to such employment, they represented to defendant that they had found a purchaser for defendant's said real property, one L. A. Steiger; that, believing said representation and relying thereon, defendant did, on said March 28, 1906, enter into a contract with L. A. Steiger for the sale and purchase of the real estate mentioned in said contract, in the words and figures following, to wit:

"BOARDMAN BROS. & Co., Real Estate Agents. 138 Montgomery St. Contract Receipt. San Francisco, March 28, 1906.

"Received from L. A. Steiger the sum of five thousand dollars ($5000.00) being deposit on account of one hundred forty thousand ($140,000.00) dollars, U. S. gold coin, the purchase price of the property this day sold to and bought by him, and being in the city and county of San Francisco, State of California, and described as follows: (Describes a 100 vara lot.) Taxes for fiscal year 1906–07 to be assumed by buyer, who is to accept the property as indicated by the survey dated March 2nd, 1906. Terms of sale": Twenty-five days are given to examine title and consummate the sale, at the termination of which the balance of purchase price is payable upon tender of deed; if title is found defective the purchaser is to state his objections in writing and the seller is to perfect the title within thirty days after the time first allowed for examination, or any extension thereof, unless the title cannot be perfected within said thirty days, in which event the same shall be perfected within a reasonable time thereafter. When title is thus perfected "the seller is to convey said property to the purchaser, and upon a tender of said conveyance to the purchaser, the purchaser is to pay the balance of the purchase price of said property. If the sale is not consummated according to the foregoing conditions, the deposit is to be forfeited. If the title cannot be perfected within the above

mentioned times, the deposit is to be returned. Taxes for the fiscal year ending June 30th, 1906, also rents to be pro-rated from delivery of deed. The said L. A. Steiger hereby agrees to comply with the conditions of this contract. Sale to be consummated at the office of Boardman Bros. & Co.''

Signed as follows:

''L. A. STEIGER.

''BOARDMAN BROS. & Co., Agents.''

''San Francisco, March 28, 1906.

''I hereby ratify the sale of the within described property according to the terms and conditions therein mentioned and agree to convey said property to the party therein named or to his assigns, and agree to pay to Boardman Bros. & Co. two thousand five hundred ($2,500.00) dollars, for services rendered when sale is closed and money paid and not otherwise. Receipt by me of the within mentioned deposit of five thousand ($5,000.00) dollars is hereby acknowledged subject to the terms of this contract.

''BERNHARD DAVIDOW.

''We agree to the foregoing.

''BOARDMAN BROS. & Co.''

Resulting from the great fire in San Francisco, in April, 1906, ''each and every day from and including April 19, 1906, to and including June 3, 1906, were regular legal holidays in the state of California.'' During that fire the buildings standing upon said premises were destroyed, but the court found that they did not form a part of the real property nor did they constitute any inducement or consideration to Steiger or to plaintiff or to any of his assignors for the purchase of said property, the lessee having the right under the lease to remove the same; that at all times since March 27, 1906, defendant has been the owner of said real estate ''free and clear of all encumbrances, save and except the lien of said mortgage for $80,000.00,'' as to the existence of which the court found that both Boardman Bros. and Steiger had knowledge and that it was agreed between defendant and Steiger that it should ''either be assumed and the amount thereof deducted from the purchase price or that said mortgage should be paid and satisfied out of the purchase price when the same was paid, all at the option of said L. A. Steiger, and that so much of said purchase price as would be necessary should be used to satisfy said mortgage''; that

at the time said contract was executed both Steiger and the
Boardmans knew of the existence of said lease and knew that
pursuant to its terms the buildings on said premises "be-
longed to the lessee and could be severed by him at any time
before the expiration of the term therein created"; but
neither on June 4, 1906, nor at any other time did Steiger
personally or by agent, verbally or otherwise, notify defend-
ant that he would not accept a deed of said property "be-
cause of any defect of title or fault of defendant, nor did
he at any time state any defect of title or fault of defendant
as a reason for not accepting such a deed. That on the con-
trary, on June 4, 1906, the defendant tendered to said L. A.
Steiger a duly executed deed of conveyance of said premises
in due form and that thereupon said L. A. Steiger stated
that he could not carry out his part of said contract and
declined to complete said sale and thereupon for a valuable
consideration waived all claim to said deposit of $5,000.00
and to said real property pursuant to said contract or other-
wise." Upon this latter point the court also found: "That
on June 4, 1906, said L. A. Steiger and the defendant agreed
with each other to mutually terminate their respective obli-
gations under said contract, that is to say, they agreed with
each other that said Steiger should and he did waive all
right to said $5,000.00 deposit and that he should and he
did release said defendant from all obligations to convey
said property, in consideration whereof said defendant re-
leased said Steiger from all obligations to purchase said
property, and thereupon their respective obligations under
said contract were by mutual agreement terminated and
abandoned and they each thereupon became released from
further obligation to each other on account of said contract
and said deposit."

It was further found: That said sum of five thousand
dollars paid to the defendant was furnished by plaintiff, the
Boardman Bros. and certain other assignors of plaintiff in
certain proportions, "but the fact that said plaintiff and said
Boardmans and said assignors of plaintiff were in any way
interested other than that said Boardmans would earn a com-
mission, was unknown to defendant and was not disclosed
to him by any one until about May 7, 1910, when this action
was commenced"; that in this respect said plaintiff and said
Steiger, the said Boardmans and said other assignors of

plaintiff "led defendant to believe that the only person with whom defendant was dealing and to whom defendant was selling said property was said L. A. Steiger and that any agreements regarding the purchase price of said real estate or the payment thereof which may have existed between plaintiff, said assignors of plaintiff and said L. A. Steiger were at all times concealed from and unknown to defendant until about May 7, 1910." It was also found that defendant commenced his action to establish his title under the McEnerney Act, in June, 1907, and perfected his title thereunder within a reasonable time; that at no time did plaintiff or Steiger or the Boardmans, or any other person pay or offer to pay to defendant the or any part of the purchase price agreed upon, nor did defendant ever convey or offer to convey said property to any person other than said L. A. Steiger. There is a finding that, on June 5, 1906, the Boardman Bros. left at defendant's place of business a letter, directed to him, which he received about ten days thereafter, stating that "Louis A. Steiger and all persons interested under him in the purchase of the lot (describing it) decline to accept a deed for the following reasons": That defendant has no record title; there is an existing mortgage of eighty thousand dollars on the property which the purchaser will not assume; the improvements on the property have been burnt; the lease on the property has been terminated without the consent of Steiger. Signed "Boardman Bros. & Co., Agents."

As to this letter the court found: That it was written by the Boardmans "in the capacity of agents of defendant, and was intended by said Boardman Bros. & Co. and was treated by defendant as information on the subject from agent to principal and not as a notification from said L. A. Steiger respecting any rights under said contract."

The findings upon which the judgment of the court rested are challenged as unsupported by the evidence. It seems to us that aside from other findings, if there was sufficient evidence to support the finding in effect that Steiger and defendant, on June 4, 1906, mutually agreed that the contract between them was at an end and that defendant should retain the money paid as a deposit as consideration for terminating the contract, it becomes unnecessary to consider other findings or any other features of the case.

There is abundant evidence to show that the Boardmans, while acting as defendant's agents, concealed from him that they and other persons were interested in the purchase and led defendant to believe that Steiger was the real purchaser. Defendant was fully justified in dealing with Steiger as sole purchaser. He knew nothing to the contrary and had no means of knowing anything to the contrary for nearly four years and long after he had with perfect right treated the contract as at an end and the matter fully settled between him and Steiger and had entered into engagements concerning the property on that assumption. It was on this assumption that, on August 8, 1906, he leased the lot for a term of years to the S H. Harmon Lumber Company.

Defendant testified, concerning his settlement with Steiger, as follows: "Mr. Mertens and myself went to Mr. Steiger's place of business and I presented him the deed. I asked for the money to pay for it. He said, 'Mr. Davidow, I cannot pay for it on account of the sale I made of the corner of Third and Brannan streets not going through. I haven't the money to pay you for it.' I said, 'What will become of the $5,000.00?' and he said, 'I am out of it. Here is the terra cotta business and that is all I have left to make my living off of.' Q. He said for you to keep the $5,000.00? A. He said, 'Keep it, I am out of it.' I said, 'All right,' and then we had a private conversation regarding the circumstances. Q. Did Boardman Brothers at any time following June 4, 1906, make to you any verbal statement or objection regarding the title to the property? A. No, sir."

Witness M. J. Mertens testified: "The first conversation that I heard, or took part in, between Mr. Davidow, myself, and Mr. Steiger took place on Monday, June 4, 1906, at Mr. Steiger's place of business out in the Mission. We called on Mr. Steiger and I presented Mr. Davidow as the grantor in that transaction and I told him we came to close the transaction. We had the deed; presented it to him and asked him for the money and Mr. Steiger said, 'I cannot pay for this property now. I have met with very severe losses both in my business and in real estate. Moreover, the sale on which I depended for a part of this money has fallen through, and I am therefore totally unable to comply with your request. I cannot take the property.' He said the sale of his property on the east corner of Third and Brannan streets

had fallen through.  Mr. Davidow broached the matter of
the forfeiture of the deposit and said, 'You know what the
penalty is if you cannot comply with the contract; you will
have to forfeit this deposit'?  Mr. Steiger said he had no
further interest in it.  He was out of it.  He could not take
the property.  He could not buy anything at that time.  Q.
Did he say anything as to what could be done with the
$5,000?  A. He understood that it was Mr. Davidow's.  Q.
What did Mr. Davidow say in reply?  A. He said, 'If you
cannot pay for the property, well, then, I have to be satisfied
with the next best thing, with the deposit.  But I am very
sorry, because I depended on this money,' etc.  That was
substantially all the conversation.  Thereupon we left.  I
went about my business and Mr. Davidow went about his.''

We think there was evidence justifying the court in its
findings as to the letter of the Boardmans of June 5, 1906.
But if otherwise, it was not written until after Steiger and
defendant had reached a settlement of the transaction and
was not received by defendant for ten days later, and it
does not appear nor does the letter purport to show that the
Boardmans were serving notice as Steiger's agents.  Nor did
the Boardmans ever inform defendant that they were au-
thorized to act as Steiger's agents.

Upon the point which we think is conclusive of the case,
the learned trial judge, in his written opinion, called to our
attention, states the matter so clearly and forcibly that we
adopt it as satisfactorily disposing of the question.  We
quote:

''The determination of this case depends upon the solution
of this question: What, if any, was the legal effect of the
interview between defendant and L. A. Steiger on the 4th
of June, 1906?  If the acts and declarations of these two men
at that time mutually ended and terminated their obliga-
tions under the contract, the defendant must and should pre-
vail in this action.  That defendant considered the contract
ended and his liability to convey his land or to return the
deposit released, is plainly evident from his subsequent ac-
tions in shortly thereafter leasing the lot for a long term of
years and in his statement as to title and encumbrances made
in the McEnerney Act proceeding.  So far as the evidence
in this case discloses, defendant never had any reason to
believe that any one other than L. A. Steiger had an in-
terest in the contract in relation to the purchase of the lot,

until shortly before the institution of this action. The arrangement of the purchasing syndicate, its advance of the five thousand dollars paid on purchase price, the proportionate interest of its respective parties were never disclosed to him. He had every reason to believe that, instead of Boardman Bros. & Co. being interested as secret purchasers of his lot, they were his agents to effect a sale of the same, and were to receive for their labor and efforts in effecting such sale from the purchase money the sum of two thousand five hundred dollars.. The notice of June 5, 1906, of Boardman Bros. & Co. to defendant is entitled to little, if any, consideration. On its face it is susceptible of two readings, one assuming the firm to be the agent of defendant simply informing defendant that Steiger has repudiated his contract and stating his purported reasons for so repudiating; the other, assuming the firm to be the agent of Steiger, notifying defendant that Steiger repudiates his contract. It is signed 'Boardman Bros. & Co., agents.' Agents for whom, Steiger, defendant, or the individual members of the firm and other members of the purchasing syndicate? Under the facts in this case defendant had the right to consider the firm of Boardman Bros. & Co. as his agents in the transaction, and if the firm was such agent of defendant, the notice of June 5, 1906, would be of no value as a notice of objections of Steiger to defendant's title.

"On the 4th of June, 1906, both defendant and Steiger had many reasons as business men for each ending any further obligations under this contract. Steiger did not have the money to complete the purchase and as a business man undoubtedly did not desire to purchase, in view of the decreased values of real estate in San Francisco at that time, while Davidow had on his hands a lot decreased in value far more than what he had received on purchase price, with records of title destroyed and methods of restoring them uncertain if not entirely wanting. Whether the tender of the deed on June 4, 1906, was premature or not on defendant's part is immaterial if at the interview on that day defendant and Steiger mutually ended their duties and liabilities under the contract. Where Steiger had obtained the five thousand dollars which had been paid on the purchase price was not a matter of any interest to defendant, and at that time he had no reason, legal or moral, to believe it was not the money of Steiger.

"There can be no question that a contract can be mutually abandoned by the parties at any stage of their performance and each of the parties released from any further obligation on account thereof; that it may be done by parol, and the fact of its having been done established by evidence of the acts and declarations of the parties. The long period of time elapsing between the tender of the deed and the institution of this action is a strong circumstance urging the conclusion that the contract was considered ended by both parties by the interview of June 4, 1906. If defendant and Steiger intended at that time by their acts and declarations to end and terminate the contract and any future liabilities thereunder, that intent should not be defeated by allowing parties never known by defendant to have had any interest in the contract until nearly four years after he supposed it was ended to come in and seek a recovery of moneys alleged to be theirs instead of Steiger's. Plaintiff's counsel suggests that Steiger was a trustee for plaintiff and his assignors, and therefore could not release the $5,000.00 paid the defendant on purchase price. If the relation of trustee existed between Steiger and plaintiff's assignors, defendant never knew of it, and if it were so, under these facts the remedy would be a personal one for settlement between plaintiff and Steiger and not involving the defendant.

"In view of the conclusion that the evidence shows that the contract and its obligations were mutually and voluntarily terminated by defendant and Steiger, it becomes unnecessary to discuss the various other matters so ably and fully presented by the briefs submitted by counsel in this action

"Findings and judgment in favor of the defendant are ordered prepared and submitted by the attorney for the defendant in this action.

"JAMES A. BARTLETT,
"Judge presiding."

No assignments of errors in rulings during the course of trial are presented in plaintiff's brief.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 2, 1915.