[Civ. No. 5018. First Appellate District, Division Two.—May 11, 1925.]

## JACOB HABERMAN et al., Appellants, v. EMIL SAWALL et al., Respondents.

[1] Contracts — Purchase of Equity in Real Property — Mutual Abandonment—Evidence—Findings—Appeal.—In this action by the vendees under an executory contract for the sale of real property, against their assignees of said contract, to recover an installment on the purchase price of plaintiffs' equity due under the assignment contract, there was ample evidence in the record to justify the findings of the trial court that the contract between plaintiffs and defendants was terminated and abandoned by mutual consent at the time said installment became due, and that the defendants were released from the payment of any moneys due thereunder and were released from any and all obligations under and by virtue of the assignment contract; and, although there

were a few inconsistencies in the testimony introduced on behalf of both plaintiffs and defendants, the power to hear and determine the facts, and to weigh the testimony, rested with the trial court, and its findings were conclusive on appeal.

[2] ID.—MUTUAL RESCISSION—PAROL EVIDENCE.—In such an action, parol evidence is admissible to prove the mutual rescission or abandonment of the written assignment contract.

[3] ID.—CONSIDERATION—MUTUAL ABANDONMENT.—While there must be a consideration for an oral rescission or abandonment of a contract to acquire real property, a mutual oral agreement to cancel the contract is a sufficient consideration; and where the vendees under an executory contract for the sale of real property have agreed to sell and assign said contract and their equity in the property to a third party, the release of said vendees from their obligation to make the transfer to said third party is a sufficient consideration for the abandonment of said contract.

---

(1) 4 C. J., p. 883, n. 33; 39 Cyc., p. 1356, n. 33.   (2) 39 Cyc., p. 1355, n. 52.   (3) 39 Cyc., p. 157, n. 46.

APPEAL from a judgment of the Superior Court of Fresno County.  D. A. Cashin, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Frank Kauke for Appellants.

Gallaher, Simpson & Hays for Respondents.

PRESTON, J., *pro tem.*—Plaintiffs commenced this action to recover from defendants the sum of $675, alleged to be due under a certain written agreement between plaintiffs and defendants.

The case was tried by the court without a jury.  Judgment went for the defendants; from this judgment plaintiffs prosecute this appeal.

The facts of the case are these: On September 15, 1919, the plaintiff, Jacob Haberman, entered into a written contract with R. S. Elliott and Ethel M. Elliott, his wife, for the purchase of certain lands owned by them in Fresno County, California, for $14,000, payable as follows: $2,500 cash; $500 April 1, 1920; $500 October 1, 1921, and $1,000

---

2.  See 10 R. C. L. 1033; 10 Cal. Jur. 928.
3.  See 27 R. C. L. 639; 25 Cal. Jur. 711.

annually thereafter, payable on October 1st of each year, until October 1, 1929, and the remaining $2,500 on October 1, 1930; all deferred payments to bear interest at the rate of seven per cent per annum, interest payable October 1, 1920, and annually thereafter; plaintiff having the option of paying any part, or all, before it became due.

The contract also provided for the right of forfeiture in case of default by the vendee; also, that on the full performance, a deed would be delivered, conveying the property free and clear of all liens and encumbrances, etc. All payments were made when due and this contract fully performed by the vendee, Jacob Haberman, from its date until the twelfth day of October, 1920, at which time the said Jacob Haberman and wife, plaintiffs in this action, entered into a written contract with the defendants, Emil Sawall and F. P. Leisman, wherein they agreed to sell and assign to the defendants all their right, title, and interest in and to the Elliott contract, above mentioned, on the following terms, stipulations, and conditions, to wit: That the unpaid portion of the purchase price to the Elliotts was the sum of $11,000 principal and interest thereon from the first day of October, 1920; this sum should be paid by the defendants herein to Mr. Elliott at the times specified in the original Elliott contract. In addition to this, defendants were to pay to plaintiff, Jacob Haberman, $9,000, payable in annual installments, as follows: $500 cash; $2,000 on or before the twelfth day of November, 1920; $2,500 on or before the 10th of January, 1921; $1,000 on or before the 30th of July, 1921; $500 on or before the 1st of October, 1922; $500 on or before the first day of October of each year thereafter until the whole purchase price of $9,000 had been fully paid; all deferred payments, except the $2,000 due November 12, 1920, should bear interest at the rate of seven per cent per annum from date until paid, and the interest on all deferred payments, except the $2,500 payment due January 10, 1921, should be made on the 1st of October, 1921, and annually thereafter; defendants to have possession of the property on November 12, 1920; or, in other words, the defendants were to pay the annual installments and interest remaining due on the Elliott contract as they became due, and perform the other covenants and conditions of that contract, which Jacob Haberman had obligated himself

to do, and in addition thereto, pay plaintiff, Jacob Haber-man, $9,000 for his equity in the Elliott contract, payable in installments as above set forth. This latter contract also contained this clause: "That should the said second parties (Sawall and Leisman) fail, neglect or refuse to make the payments hereinabove required to be made by them or other-wise fail, neglect or refuse to comply with any of the terms of this contract or of the aforesaid contract of sale on their part, then the said first parties (Haberman and wife) may, at their option, consider this contract canceled and termi-nated, and shall be released from all obligations in law or in equity to make said assignment and transfer of said con-tract of sale to the said second parties, and the said second parties shall forfeit all right thereto, and to the real and personal property therein described, and will quit and de-liver up possession thereof to the said first parties, and it is agreed that time is of the essence of this contract."

The terms of both contracts were complied with by the defendants until the time when the installments became due on October 1, 1923. On this date the defendants, under their contract with plaintiffs, had agreed to pay $1,000 and interest to Elliott and wife, and an installment of $500 and interest to plaintiffs. The $1,000 and interest due Elliott and wife on this date were not paid; the $500 due the plain-tiff, Jacob Haberman, was not paid, and amounted to $675, including interest. Mr. Elliott, after October 1, 1923, de-manded payment of Haberman, and Haberman stated that he could not make the payment himself and that he was informed that Mr. Sawall and Mr. Leisman could not meet the payments, and asked Mr. Elliott for time. Mr. Elliott insisted that Haberman take the land and make the payments. Then Mr. Elliott gave Haberman two days to make up his mind whether he would take the land or not. Haberman visited the property and in a day or two returned and told Mr. Elliott that he did not want the land, and wanted to know how he could get released from his con-tract, and Mr. Elliott informed him that he understood Sawall and Leisman were willing to surrender their con-tract, and that if he, Haberman, would give him, Elliott, a quitclaim deed, that would release him from his contract. Haberman agreed to this. Haberman then had a conversa-tion with Mr. Sawall and Mr. Leisman and demanded pay-

ment of them and they both informed him that they could not make the payments and were unable to go on with the contract, etc. Haberman, after further conversation, agreed to release them from any further payments under the contract, and stated that he was going to "call the contract off," and that he was going to quitclaim the land back to Elliott. Thereupon, Sawall and Leisman agreed that Haberman might convey the property back to Elliott, saying, "that was the only thing to do." A day or two after this conversation, Haberman and his wife and Mr. Elliott met at a real estate office in Fresno and there Haberman and his wife signed and acknowledged a quitclaim deed for the property covered by the agreement, to Mr. Elliott. After this deed was signed and acknowledged, there was a conversation between the real estate agent and Haberman in the German language, and after this conversation the real estate agent, a Mr. Yurk, stated to Mr. Elliott that Haberman wanted him, Elliott, to leave the deed in Yurk's hands until Leisman and Sawall brought in their contract. This was done. Elliott and Haberman and wife left the office of Mr. Yurk, and the same day Mr. Haberman met a friend, Mr. Scheidt, and told him what he had done with reference to the contracts, and Scheidt informed him he had made a mistake, and that he should recall the deed and collect all of the money due him from Leisman and Sawall. Haberman and Scheidt then consulted an attorney and this action was brought to recover $675, being the principal and interest due from defendants under the contract with the plaintiffs on October 1, 1923.

What became of the quitclaim deed is not revealed by the record. Mr. Elliott, being unable to recover possession of the deed, brought an action against plaintiffs and defendants to quiet title. No appearance was made by any of the plaintiffs or defendants to this suit to quiet title, and in December, 1923, Elliott procured judgment by default quieting his title, and thereafter demanded possession of the premises from a tenant of defendants, and after some negotiations with the tenant regarding the removal of his crops, possession of the premises was delivered to Mr. Elliott without protest.

[1] From these facts the trial court found that the contract between plaintiffs and defendants was then and

there terminated and abandoned by mutual consent, and the defendants released from the payment of any moneys due thereunder, and released from any and all obligations under and by virtue of said contract, and gave judgment for the defendants.

From the testimony above related there is ample evidence in the record to support these findings of the trial court. There were a few inconsistencies in the testimony of both plaintiff, Jacob Haberman, and the defendants, but the power to hear and determine the facts, and to weigh the testimony, rested with the trial court, and, as we have just shown, such findings, being supported by the evidence, are conclusive upon this court.

[2] (1) It is contended by appellants that a mutual rescission or abandonment of the contract between plaintiffs and defendants could not be effected by a verbal agreement, and that the court erred in admitting evidence of the conversations between Jacob Haberman and the defendants, Sawall and Leisman, as it was an attempt to vary the terms of a written contract by oral evidence.

The purpose of the introduction of this oral testimony was not to vary the terms of the written contract, but to show that the contract between the plaintiffs and defendants had been canceled by mutual consent and had no longer any operative effect. Such evidence is admissible for such purpose, as is oral testimony that the terms of a written agreement had been fully performed by the parties, or that the instrument evidencing such agreement has itself been canceled and destroyed by the concurrent act of both parties. (*Guidery* v. *Green,* 95 Cal. 634 [30 Pac. 786]; *Arsenio* v. *Smith,* 50 Cal. App. 173 [194 Pac. 756]; *Hooke* v. *Great Western Lumber Co.,* 54 Cal. App. 681 [202 Pac. 492]; *Tompkins* v. *Davidow,* 27 Cal. App. 327 [149 Pac. 788].)

In the case of *Tompkins* v. *Davidow,* above cited, which is somewhat similar to the case at bar, the court said: "There can be no question that a contract can be mutually abandoned by the parties at any stage of their performance and each of the parties released from any further obligation on account thereof; that it may be done by parol, and the fact of its having been done established by evidence of the acts and declarations of the parties." Again, in the case of

*Hooke* v. *Great Western Lumber Co.*, above cited, this court said: "It is a general rule that a written contract, as well as one not in writing, may be discharged or modified by a subsequent oral agreement, and that the parol evidence rule does not exclude oral evidence thereof."

[3] It is next contended by appellants that there was no consideration for the oral rescission or abandonment of the contract. It is true, as contended by appellants, that it is necessary that there be a consideration, but it has been held that the mutual oral agreement to cancel the contract is a sufficient consideration (*Hooke* v. *Great Western Lumber Co.*, *supra*) and in this case Jacob Haberman's release from his obligation to transfer the contract between himself and Elliott to defendants was also a sufficient consideration for the abandonment of the contract.

It therefore follows that the court's ruling in the admission of evidence was correct and that the judgment should be, and it is hereby, affirmed.

Langdon, P. J., and Nourse, J., concurred.