[Civ. No. 15465. Second Dist., Div. Two. Apr. 22, 1947.]

TOM MULROONEY, Respondent, v. P. N. PIETRO et al., Appellants.

Chester C. Kempley and W. L. Englehardt for Appellants.

E. H. Delorey and P. T. Howe for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court without a jury for the alleged conversion of a number "55" automatic screw machine, defendants appeal.

So far as material here the complaint was in two causes of action, one for the recovery of a number "55" automatic screw machine, and the other for damages for conversion of the machine. In paragraph seven of the first cause of action, it is alleged that plaintiff was damaged in the sum of $4,000 by reason of the alleged detention of the machine. In paragraph three of the second cause of action, it is alleged that plaintiff was damaged in the sum of $9,576 by reason of the detention of the machine. Both of the foregoing allegations were found by the trial court to be true and in addition, the trial court

found "that ever since the 9th day of August, 1943, the defendants and each of them have unlawfully detained and converted that certain number '55' Acme Automatic Screw Machine, . . ."

■ This is the single question necessary for us to determine:

*Was there substantial evidence to sustain the trial court's findings that defendants unlawfully detained or converted a number "55" automatic screw machine from plaintiffs?*

This question must be answered in the negative. The only evidence introduced upon this issue was given by plaintiff and defendants. Plaintiff testified that on August 9, 1943, he took the number "55" machine to defendants' place of business pursuant to an oral agreement that the defendants would operate the machine upon the same terms and provisions as appeared in a written agreement between the parties dated July 9, 1943, covering two "53" automatic machines; that in the latter part of November, 1943, he served upon defendants ten days' oral notice of the termination of the oral contract, but that on November 29, 1943, a writing was executed by the parties for their governance in relation to the "55" machine. By such instrument plaintiff agreed to leave the number "55" machine with defendants "for the period necessary to run such contracts that have been placed . . . from the Collins Engineering Company . . . time limit not to exceed March 15, 1944 . . ."; plaintiff "to receive 45% of all net profits earned on the above machine. . . ." The writing was thereafter acted upon by defendants as constituting the terms of their understanding with reference to defendants' possession of the number "55" machine. On the other hand defendants testified that the number "55" machine had been brought to them by plaintiff in the month of August, 1943, for the purpose of having it repaired. Whether the trial court believed plaintiff or defendants neither furnishes support for the finding that defendants were guilty of conversion or of unlawfully detaining the number "55" machine from plaintiff. There is no testimony that preponderates against the writing of November 29, 1943. It follows that the findings of the trial court are without substantial support.

By certain parol testimony plaintiff claimed that he and defendants had orally agreed to terminate their contract in January, 1944. By such oral agreement he contends that a mutual rescission was effected notwithstanding the fact that

according to his own testimony defendants declined to make delivery of the number "55" machine to him. ▮ It is elemental that an oral agreement to rescind a written contract is ineffectual unless such oral agreement is consummated. ▮ It is now established that the parol evidence rule is not merely a rule of evidence but a principle of substantive law. (*Estate of Gaines,* 15 Cal.2d 255, 264 [100 P.2d 1055]; *Nourse* v. *Kovacevich,* 42 Cal.App.2d 769, 771 [109 P.2d 999].) ▮ The only evidence of a mutual rescission of the contract of November 29, 1943, which the court could legally have considered was either a written agreement signed by the parties or an executed oral agreement terminating their written contract. Unless so rescinded the rights of the parties were determinable solely by the writing of November 29. The parol evidence of such attempted rescission should have been disregarded even though it was received without objections. (*Gore* v. *Bingaman,* 29 Cal.App.2d 460, 479 [85 P.2d 172]; *Fogler* v. *Purkiser,* 127 Cal.App. 554, 560 [16 P.2d 305].)

The writing of November 29 contained the statement "the time limit not to exceed March 15, 1944." A reasonable interpretation of such language is that defendants should continue use of the machine until the specified date. But viewing the contract most favorably to plaintiff he would have no right to a return of the machine until the expiration of the "period necessary to run such contracts that have been placed" with defendants by the Collins' Engineering Company. ▮ There is no proof that any contracts had been placed with defendants by the engineering company; neither is there proof that all of such contracts had been "run." It follows that in the absence of proof that the period necessary to "run" such contracts had expired, plaintiff could not reasonably contend that his obligation to leave the machine until March 15, 1944, had been satisfied.

The judgment is reversed.

Moore, P. J., concurred.

WILSON, J.—I dissent. I disagree with the majority decision holding (1) that the evidence is insufficient to sustain the findings and judgment in favor of plaintiff for the return of his machine under the cause of action for replevin; (2) that the written contract between plaintiff and defendants relating to the possession of the machine could not be and was

not abrogated by their oral agreement and that evidence was inadmissible to prove the oral termination of the contract; (3) that defendants were entitled to retain possession of the machine in any and all events until March 15, 1944.

(1) The complaint consists of two causes of action. The first is for the replevin of a No. 55 automatic screw machine, with the conventional allegations required in such an action; the second is for damages for the conversion of the same machine. Judgment was rendered for plaintiff on each cause of action.

The allegations of the first cause of action are as follows: (1) That before and at the time of the commencement of the action plaintiff was the owner and entitled to the immediate possession of one Number 55 Acme Automatic Screw Machine; (2) That its value was $4,000; (3) That on August 9, 1943, defendants came into possession of the machine and still retain possession of it; (4) That on January 31, 1944, plaintiff demanded possession of the machine and defendants refused to deliver it; (5) That defendants withheld possession at the time of the commencement of the action to plaintiff's damage in the sum of $4,000

The denials, admissions and evidence relating to the foregoing allegations are as follows: Allegation (1) was denied by the answer. Plaintiff testified that he was the owner of the machine and we are not referred to any contrary evidence. Defendants admitted that they obtained it from plaintiff, and do not claim that any other person owned it. Allegations (2) and (3) were not denied and defendants expressly admitted that the machine was and had been in their possession since August 8, 1943. Allegation (4) was denied. Plaintiff testified that he made the demand on the date alleged in the complaint and that defendants had not delivered the machine to him. Defendants alleged that they were retaining possession of it under a claim of lien for repairs. This is an admission of plaintiff's allegation of nondelivery. Allegation (5) was denied. By failing to deny allegation (2) as above stated the value was admitted, and plaintiff's damage was in that amount since no other sum is suggested by the pleadings or the evidence.

In connection with their denial of allegation (5) and with their admission that they had had possession of the machine since August 8 (plaintiff alleged August 9), 1943, defendants asserted that they had made repairs on it at plaintiff's request

and claimed a mechanic's lien for the value of their labor and material. Defendants testified that the machine was brought to them by plaintiff in July, 1943, for the purpose of having it repaired. Plaintiff denied this contention and testified that he had delivered it to defendants first under an oral contract by which the purpose for which it was to be used was agreed upon; that subsequently he served on defendants a notice terminating the oral agreement; that thereafter under date of November 29, 1943, a written agreement was entered into concerning its use. His testimony was that under the oral agreement the machine was to be used according to the terms of a written lease agreement previously made between him and defendants relating to the use of two other machines owned by plaintiff that are not involved in this action.

The former agreement relating to the two machines and the written agreement relating to machine Number 55 are pleaded in defendants' amended answer with an allegation that by reason of the latter agreement defendants were entitled to possession of machine Number 55 until March 15, 1944. They further allege that they have a lien on the machine for repairs which they made on it.

The former agreement provided that the cost of repairs of the two machines and other expenses should be deducted before division of profits for work performed by the machine was made between plaintiff and defendants. By reason of said provision defendants would not have had a lien for repairs on the two machines. The same condition was adopted by the oral agreement when machine Number 55 was delivered into the possession of defendants. The agreement covering the two machines need not be considered except for the purpose of showing that its adoption by the oral agreement deprived defendants of the right to claim a lien for repairs on Number 55.

The oral agreement was terminated and was superseded by the written agreement of November 29, 1943. Under its terms plaintiff agreed to leave the machine with defendants for the period necessary "to run" contracts placed with defendants by Collins Engineering Company, "time limit not to exceed March 15th, 1944." Plaintiff was to receive 45 per cent of the net profits earned on the machine after deducting repairs, replacements, labor, tooling and other expenses involved in operating the machine.

Since the agreement provides for a division of the profits after deducting the cost of repairs and other expenses, de-

fendants have no lien for the repairs and are not entitled to retain possession of the machine on that ground.

In January, 1944, a controversy arose between the parties. Defendants contended that plaintiff was preventing them from finishing the contracts for which they were using the machine. Plaintiff asserted that defendants "were not running the job," apparently meaning that they were not using the machine to its capacity, thus depriving him of the royalties to which he was entitled under the agreement. Plaintiff testified that defendants said "Let's call this whole thing off, you take your machine out of here and we will have a clean bill of health and we will call this whole thing off." He further testified that defendant Pietro said "I wish you would take it out tomorrow because we have a lot of other machinery coming in here and we need the space. I would consider it a favor if you would take it out tomorrow." Plaintiff signified his acquiescence in and expressly agreed to comply with this suggestion but when he sent men to remove the machine defendants refused to permit them to take it.

Notwithstanding the controversy as above related, there is no evidence that defendants had any contracts for work on which the machine could be used or any uncompleted contracts previously entered into when the dispute arose in January, 1944. It is not clear that they had any contracts with the Collins Engineering Company or with anyone else when the contract of November 29, 1943, was signed by plaintiff and defendants. As far as the evidence shows the parties were quarreling about a nonexistent matter. In any event they agreed to and did terminate and conclude the contract and their relations with each other.

Since defendants were without right to hold the machine for repairs and since they agreed to terminate the contract, plaintiff was entitled to recover the machine under the cause of action for replevin.

(2) The majority of this court are in error in holding that the oral evidence relating to the termination of the contract was inadmissible and must be ignored on this appeal. The contract was "called off," cancelled and terminated by mutual consent, and each party was relieved from further liability and obligation under it. The contract was rescinded by consent of all parties to it (Civ. Code, § 1689) and oral evidence was admissible to prove the fact. (Restatement, Contracts, § 407.)

A written contract may be discharged by a subsequent oral agreement and the parol evidence rule does not exclude oral evidence of the agreement terminating the contract. It may be shown by oral evidence that ''by mutual oral agreement between the parties, the performance was waived and the contract orally canceled.'' (*Hooke* v. *Great Western Lumber Co.*, 54 Cal.App. 681, 682 [202 P. 492] ; *Bevans* v. *Huntington*, 65 Cal.App. 266, 268 [223 P. 572] ; *Haberman* v. *Sawall*, 72 Cal.App. 576, 581 [237 P. 776].) Evidence is admissible ''to show that the parties mutually agreed to call the transaction off'' and that they intended that each should be released from its provisions. (*Gardiner* v. *McDonogh*, 147 Cal. 313, 322 [81 P. 964] ; *Tompkins* v. *Davidow*, 27 Cal. App. 327, 335 [149 P. 788].) A written agreement may be abrogated by an oral contract and in such case section 1698 of the Civil Code has no application. (*Dugan* v. *Phillips*, 77 Cal.App. 268, 277 [246 P. 566] ; *San Roque Properties, Inc.* v. *Pierce*, 18 Cal.App.2d 379, 380 [63 P.2d 1198] ; *Klein Norton Co.* v. *Cohen*, 107 Cal.App. 325, 332 [290 P. 613] ; *McClure* v. *Alberti*, 190 Cal. 348, 350 [212 P. 204] ; *Producers Fruit Co.* v. *Goddard*, 75 Cal.App. 737, 757 [243 P. 686] ; *Arsenio* v. *Smith*, 50 Cal.App. 173, 175 [194 P. 756] ; *Credit Clearance Bureau* v. *George A. Hochbann Contr. Co.*, 25 Cal. App. 546, 547 [144 P. 315].)

Since there is doubt as to whether any manufacturing contracts ever existed and there is no evidence that if they existed they were uncompleted in January, 1944, the agreement to ''call this whole thing off'' and to terminate the contract of November 29, 1943, was not an oral modification of an agreement in writing. The evidence relating thereto was not offered nor admitted for the purpose of attempting to vary the terms of a written contract by oral evidence. It was admissible to prove the termination of the contract which could be concluded orally in the circumstances and for the reasons stated.

Counsel for defendants are able lawyers with long experience in the trial of cases. They offered no objection to the introduction of the evidence that the majority opinion declares was not admissible and did not move to strike it from the record. They knew the subject to which the testimony was addressed and knew that it was not offered as a modification of the contract but was properly presented for the purpose of proving the termination of the contractual relations

between the parties. Accepting it as legal evidence they called their clients as witnesses who denied much of plaintiff's testimony. The trial court believed and adopted plaintiff's version of the agreement to cancel the written contract and disbelieved the evidence of defendants. This court is without power to decide otherwise or to disregard the evidence so received by the trial court and acted upon by the court and by counsel for both parties.

(3) The language of the contract, "time limit not to exceed March 15th, 1944," cannot be construed to mean that defendants had the absolute right to the possession of the machine until that date. They were to have it for the period necessary "to run" the contracts of the Collins Engineering Company, if they had such contracts, but in no event beyond the date mentioned. In the absence of evidence that such contracts were in existence it cannot be assumed that there were any; and if defendants had had contracts it cannot be assumed, in the absence of evidence, that they were not completed in January, 1944. If there had been such contracts defendants were not entitled to keep the machine after they were completed; and if they had been completed when the dispute arose in January, 1944, plaintiff was within his rights in demanding possession of the machine at that time. He was entitled to it in any event on March 15, 1944, even though contracts, if they existed, then remained unfinished. In other words, the contract did not mean that defendants could retain the machine until that date under any and all circumstances. It measured the maximum time during which plaintiff could be kept out of possession, and such maximum time was shortened to the date of completion of contracts that defendants had on November 29, 1943.

Plaintiff's assertion to defendants that they "were not running the job" was not an admission that they had any unfinished contracts on hand. His contention is to be construed as a complaint that defendants were not doing any work that produced the royalties to which he was entitled by virtue of the written agreement of November 29, 1943. In fact the evidence shows that the machine had been idle for some time before the dispute arose in January, 1944.

---

The court found that all allegations in the first cause of action were true, from which it is manifest that the court believed plaintiff's testimony that the machine was not de-

livered to defendants in the first instance for the purpose of repairs but for their use in accord with the oral agreement entered into when the machine was placed in their possession. So believing, the court properly held that defendants had no lien on the machine. By reason of the terms of the written agreement defendants could make no claim of lien for repairs after it was executed. The court believed that defendants were not "running the job," as agreed; that their statements above quoted signified their consent to the termination of and did terminate the contract in January, 1944, and indicated their intent to be no longer bound by it and their desire for the removal of the machine; that plaintiff also agreed to the abrogation of the contract. So believing, the court could not do otherwise than hold that plaintiff was entitled to possession of the machine on the date he demanded its return. It is clear that the court did not believe the evidence given by defendants denying plaintiff's version of the dispute and of the resultant conclusion thereof.

Since the trial court on abundant substantial evidence resolved all conflicts in the evidence in favor of plaintiff this court is bound by the findings.

The evidence and the express admissions of defendants in their answers sustain the findings as to the first cause of action and the findings sustain that portion of the judgment requiring the return of the machine to plaintiffs or the recovery by him of $4,000 if delivery cannot be had.

The second cause of action is for damages for the alleged conversion of the same machine. The allegations of the first cause of action as to its ownership, its value, its delivery to defendants, their retention of possession, plaintiff's demand for delivery, and defendants' refusal to deliver, were adopted as a part of the second cause with the further allegations that defendants had unlawfully detained and converted the machine and that its rental value was $28 per day. Plaintiff sought and is entitled to a judgment for the loss of the rental value of the machine in addition to the recovery of the machine or its value. The court found that plaintiff had suffered damages in the sum of $18,738.74. The evidence shows that plaintiff was damaged by the detention of the machine but the record does not indicate how the court arrived at that figure. Both the evidence and the findings are confusing and neither will support a judgment in that amount. Nor can this court determine the correct sum from the record before us.

Upon a new trial the evidence on this phase of the case may be made clear.

That portion of the judgment relating to the first cause of action reading as follows should be affirmed: "[I]t is hereby Ordered, Adjudged and Decreed, that the No. 55 Acme Automatic Screw Machine, Serial Number 18201, as described in paragraph III of Plaintiff's First Cause of Action, be returned to plaintiff, or in lieu thereof the sum of $4,000.00, the value thereof, in case a delivery can not be had."

That portion of the judgment relating to the second cause of action reading as follows should be reversed: "And it is further Ordered, that the plaintiff do have and recover from the defendants, and each of them, damages for the taking and detention of said personal property in the sum of $18,738.74, with interest thereon at the rate of 7% per annum from the date hereof until paid." The case should be remanded for a new trial on the issues of the second cause of action.