551 P.2d 74

**STANDAGE VENTURES, INC., et al., Theressa M. Sheffer and Homer G. Phelps, Appellants,**

v.

**STATE of Arizona, Appellee.**

**No. 2 CA–CIV 2093.**

Court of Appeals of Arizona, Division 2.

June 22, 1976.

Rehearing Denied Aug. 3, 1976.

Review Granted Sept. 16, 1976.

Douglas H. Standage and Gove L. Allen, by Gove L. Allen, Mesa, for appellants.

Bruce E. Babbitt, Atty. Gen., by Stanley Z. Goodfarb and Paul S. Harter, Asst. Attys. Gen., Phoenix, for appellee.

## OPINION

HOWARD, Chief Judge.

Was the width of the highway validly established when appellants received their patents from the United States? That was the issue below.

This was an inverse eminent domain action by owners of various five-acre parcels of land abutting a state highway southeast of Apache Junction, Arizona. The state claimed that its right-of-way over their land was 400 feet wide whereas appellants claimed the right-of-way was only 100 feet wide and therefore sought damages because the state in widening the highway unlawfully "encroached on their land".

The case was tried to the court which after extensive findings of fact and conclusions of law, entered a judgment in favor of the state and against appellants.

Appellants present five questions for review but we need answer only one which is dispositive: Is parol evidence admissible to identify the map referred to by the resolution establishing the widening of the highway?

The findings of fact essential to a decision of this case show that appellants' properties are located in Pinal County, Arizona, township 1 north, range 8 east, sections 21 and 27 and abut the Mesa-Superior Highway. The original road was built by Pinal County in 1919 through 1920 over unreserved public lands belonging to the United States. When the state acquired title to the highway in 1927, the width of the right-of-way was 100 feet.

In a 1928 survey made by Pinney and Jacobs for the Arizona Highway Commission, the right-of-way was shown as 100 feet.

In October of 1940, the Arizona State Highway engineer submitted a map application to the Department of the Interior for an increase of the 100-foot right-of-way to 400 feet in sections 21 and 27. The map application was transmitted on Octo-

ber 9, 1940, by letter to the Registrar of the United States Land Office in Phoenix, Arizona. The land was then in federal ownership and had been withdrawn for use as a stock driveway. In 1941, the United States approved the application of the State of Arizona and the highway department prepared plans for the reconstruction and improvement of the highway. The plans showed a highway right-of-way of 200 feet in width over privately owned sections and 400-foot width right-of-way over publicly owned sections. On March 2, 1942, the state engineer submitted the following written recommendation to the Arizona Highway Commission:

"TO THE HONORABLE ARIZONA STATE HIGHWAY COMMISSION: Pursuant to Section 1569, Revised Code of Arizona, 1928, I hereby report that I have caused a survey to be made of a portion of the Mesa-Superior Highway for the purpose of locating, relocating and altering a portion of the highway along the located, relocated and altered center line thereof, *as the same is delineated upon that certain map entitled 'State Highway-Mesa-Superior-Higway-U.S. Route 80, Scale 1" is equal to 1000'' on file in my office in the Highway Building in the City of Phoenix, County of Maricopa, State of Arizona.*" (Emphasis added)

Thereafter followed a legal description of the portion of the highway that was affected.

On March 6, 1942, the Arizona Highway Commission accepted the recommendation of the state engineer and passed a resolution authorizing the reconstruction and alteration as follows:

"RESOLUTION:

WHEREAS, W. R. HUTCHINS, the Arizona State Highway Engineer, has presented to and filed with this Commission his written report and recommendation respecting the location, relocation and alteration of a portion of the Mesa-Superior Highway, U.S. Route 80, in ac-cordance with maps and plats now on file in the office of the State Highway Engineer, which written report is attached to and made a part of this Resolution;

NOW, THEREFORE, BE IT RESOLVED, that the public convenience will be subserved by the location, relocation and alteration of that part of the Mesa-Superior Highway, U.S. Route 80, along the located center line thereof, *as set forth in the proposal and report*;

That said proposal and report are approved hereby;

That said part designated as the Mesa-Superior Highway, U.S. Route 80, is hereby designated a state highway upon the line of survey, as delineated in the said maps and plats on file in the office of the State Engineer.

THAT SAID STATE HIGHWAY ENGINEER IS HEREBY AUTHORIZED AND DIRECTED TO ACQUIRE BY EXERCISE OF THE POWER OF EMINENT DOMAIN, OR OTHERWISE, IN THE NAME OF AND FOR THE STATE OF ARIZONA, ANY AND ALL LAND OR PROPERTY NECESSARY AND REQUIRED IN AND FOR THE LOCATION, RELOCATION AND ALTERATION OF SAID HIGHWAY, TOGETHER WITH ANY RIGHT, TITLE OR INTEREST THEREIN, WHICH IS NOW OR HEREAFTER NECESSARY OR REQUIRED FOR OR IN THE LOCATION, RELOCATION AND ALTERATION OF SAID MESA-SUPERIOR HIGHWAY, U.S. ROUTE 80." (Emphasis added)

On March 6, 1942, the plans for the project were completed and on file in the Arizona Highway Department and they showed a designated 400-foot right-of-way in Sections 21, 27 and 35 of township 1 north, range 8 east.

Two witnesses at the trial, Mr. Matlock and Mr. Esser, testified that the map described in the state engineer's recommenda-

tion actually consisted of two documents which indicated a right-of-way of 200 feet in width in the privately owned sections and a 400-foot wide right-of-way in the area in question.

In August of 1950, the Bureau of Land Management issued a small tract classification order number 21 authorizing the subdivision of sections 21 and 27 into five-acre tracts for lease and sale. The appellants or their predecessors in·interest all received patents to the land in question pursuant to the foregoing classification—a small tract classification order. The patents contained the following language:

> "The area described contains 5 acres, according to the Official Plat of the Survey of the said Land, on file in the Bureau of Land Management: . . ."

The official plat of the survey of the land on file in the Bureau of Land Management shows a state highway traversing appellants' land but does not, however, indicate the width of the highway. In furtherance of the small tract classification order, the United States government made surveys of the sections in 1951, prior to acquisition of the appellants' property, which indicated that the state highway right-of-way was 400 feet in width. The results of the survey and the field notes of the surveyor were on file with the Bureau of Land Management in Phoenix, Arizona.

Appellants originally filed an action in the federal district court which was dismissed for lack of a federal question. This case was then filed in the superior court.

This case involves the same highway resolution which was at issue in the case of *State v. Crawford*, 7 Ariz.App. 551, 441 P.2d 586 (1968) and *State v. Crawford*, 13 Ariz.App. 225, 475 P.2d 515 (1970). In those cases the state contended the map referred to in the engineer's report was lost.

In the case at bench Mr. Matlock and Mr. Esser testified on behalf of the state that the map was not lost but consisted of two maps, exhibits 20 and 22.[1] At an earlier stage in the proceedings, Mr. Matlock was of the opinion that the map was lost.

Appellants claim that the trial court erred in considering the testimony of Esser and Matlock and Exhibits 20 and 22. The state claims that appellants waived any objection on a parol evidence basis by failing to interpose such objection at trial and that, in any event, the testimony and exhibits do not alter, vary or contradict the terms of the engineer's report of the highway resolution.

■ In order for a public highway to be created, it must be established in strict compliance with the provisions of Arizona law. *Tucson Consolidated Copper Company v. Reese*, 12 Ariz. 226, 100 P. 777 (1909).

Section 59–203 Arizona Code Annot. 1939, provided:

> "Whenever the state engineer desires to establish, open, relocate, alter, vacate or abandon a state highway, or any portion thereof, or when directed to do so by the commission, he shall make a *written report* to the commission *describing the highway, or portion thereof, to be affected thereby*. If the commission decides that the public convenience will be subserved, it shall enter a resolution upon its minutes approving the proposed action and authorizing the state engineer to proceed thereon, and to acquire any property therefor by condemnation or otherwise." (Emphasis added)

The report of the state engineer does not contain a full description of the highway but only refers to that portion of the highway "delineated upon that certain map entitled 'State Highway-Mesa-Superior Highway-U.S. Route 80, Scale 1″ is equal to

1. Since the state did not obtain relief in the *Crawford* cases the doctrine of judicial estoppel does not apply. *Mecham v. City of Glendale*, 15 Ariz.App. 402, 489 P.2d 65 (1971);

*State Farm Automobile Insurance Company v. Civil Service Employees Insurance Company*, 19 Ariz.App. 594, 509 P.2d 725 (1973).

1000''', on file in my office in the Highway Building in the City of Phoenix, County of Maricopa, State of Arizona."

■ The purpose of Section 59–203, Arizona Code Annot. 1939 is two fold: to provide the authority for purchase of real property and to provide a predicate for condemnation of the lands if they cannot be purchased. In an eminent domain action the state's complaint, as a prerequisite to maintenance of the action, must show that the proper governmental authority has found that the taking of the particular land in question is necessary. *Sandford v. City of Tucson*, 8 Ariz. 247, 71 P. 903 (1903). In the case of In re Forsstrom, 44 Ariz. 472, 496, 38 P.2d 878, 888 (1934) the resolution of the Tucson City Council referred to plans and specifications " . . . now on file in the office of the State Highway Engineer, State Highway Department, Phoenix, Arizona, and in the office of the City Engineer of the City of Tucson, Arizona, which plans and specifications are known as 'National Recovery Municipal Project No. 9 for Arizona—Stone Avenue Underpass' . . . " The court, on appeal, held that the resolution was valid since a legislative body, by reference to something already in existence, may incorporate that thing as part of the law or ordinance. Although citing different authority, the same conclusion was reached by this court in the first *Crawford* case. We believe this rule is also applicable to the report of the state engineer which was required by section 59–203 Arizona Code Annot. 1939.

■■ The parol evidence rule prohibits adding to, subtracting from, varying or contradicting the terms of a complete and unambiguous contract. *Richards Development Company v. Sligh*, 89 Ariz. 100, 358 P.2d 329 (1961). This rule applies not only to contracts, but also to certain unilateral acts which are required to be in writing. In such instances the writing is the only permissible subject of proof. It is immaterial what the person intended, his act must be in writing and must be judged by the writing alone. Wigmore refers to this as compulsory integration. Wigmore on Evidence 3d ed. Sec. 2427 p. 94. In *Flemming v. Board of Comm'rs of Ellsworth County*, 119 Kan. 598, 240 P. 591 (1925) the court in its syllabus stated:

"The records of the proceedings of the county commissioners, pertaining to laying out a road, required by law to be kept, and which are unambiguous, cannot be modified by parol testimony in a collateral proceeding."

In accord with the foregoing proposition are *Barrett v. Hand*, 158 Neb. 273, 63 N. W.2d 185 (1954) and *Western Sand & Gravel Company v. Town of Cornwall*, 2 Ill.2d 560, 119 N.E.2d 261 (1954).

■ Assuming arguendo that appellants did not object to the admissibility of the parol evidence when offered, we note that they did object to the court's findings of fact on the basis of that rule and thus did bring it to the trial court's attention. Did the failure to object when offered constitute a waiver of the benefits of the rule? As far as contract law is concerned, we know that the parol evidence rule is a substantive rule and not an exclusionary rule of evidence. *Rental Development Corporation of America v. Rubenstein Construction Company*, 96 Ariz. 133, 393 P.2d 144 (1964); *McNeil v. Attaway*, 87 Ariz. 103, 348 P.2d 301 (1959); *Richards Development Company v. Sligh*, supra; *Carrillo v. Taylor*, 81 Ariz. 14, 299 P.2d 188 (1956). In an early Arizona case, *Cooper v. Holder*, 24 Ariz. 415, 210 P. 690 (1922), we find the court treating the parol evidence rule as an exclusionary rule and holding that failure to object constituted a waiver of the benefits of the rule. In view of the later pronouncements of our Supreme Court as to the true nature of the parol evidence rule, we do not believe *Cooper v. Holder*, supra, represents the law in Arizona. Rather, we believe that Arizona follows the law of those jurisdictions which, in recognition of the substantive nature of the rule, hold that even though the evidence is admitted without

objection it must be ignored by the trial court and is of no probative value. *Meadows v. Continental Assurance Company*, 89 F.2d 256 (5th Cir. 1937); *Mulrooney v. Pietro*, 79 Cal.App.2d 311, 180 P.2d 62 (1947); *Glendale Emergency Hospital v. Reynolds*, 135 Cal.App.2d Supp. 835, 286 P.2d 1022 (1955); *Taylor v. Wells*, 188 Or. 648, 217 P.2d 236 (1950); *Ruff v. Boltz*, 252 Or. 236, 448 P.2d 549 (1968) and see cases cited in 88 C.J.S. Trial Sec. 154 p. 301 footnote 15.

We conceive of no reason to distinguish between contracts and other written documents when considering the true nature of the parol evidence rule. We therefore hold that it is a rule of substantive law, and not an exclusionary rule of evidence, whether the writing involved is a contract or some other written document.

■ The engineer's report described the portion as that " . . . delineated upon that certain map entitled 'State Highway-Mesa-Superior Highway-U.S. Route 80, Scale 1″ is equal to 1000',' on file in my office . . . " The resolution of the State Highway Commission adopts this description by reference. There appears to be no patent ambiguity in the description. It refers to one single map and sets forth the title of that map. If there were two maps filed in the engineer's office with the same title, there would be a latent ambiguity and parol evidence would be admissible to identify which was the correct map. Such testimony would not vary or contradict the written report and resolution. But the testimony in this case that the map referred to is in reality two maps, one entitled "Mesa-Superior Highway-Scale 1″ equals 1000'" and other "Mesa-Superior U.S. Highway 80, 89, 60 and 70 Scale 1″ equals 1000'" clearly varies and contradicts the reference in the engineer's report. The trial court erred in considering the testimony of Matlock and Esser and the Exhibits which they claimed constituted the map referred to in the engineer's report. It therefore erred in finding that the state had validly established the width of the highway prior to appellants' acquisition of their patents from the U.S. government.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

KRUCKER and HATHAWAY, JJ., concurring.