[Civ. No. 3074.   Third Appellate District.—March 25, 1926.]

## J. E. DUGAN, Respondent, v. J. P. PHILLIPS, Appellant.

[1] SALES—WARRANTY—STATEMENTS IN CATALOGUE.—Where the catalogue with reference to an auction sale of pure bred cattle recites that the owners guarantee every animal sold to be exactly as represented and that every animal is guaranteed to be a breeder, and the auctioneer at the time of sale announces that every animal is sold according to the terms and conditions printed in the catalogue, the owner of any animal sold at the auction becomes bound, upon the entry of the auctioneer's memorandum of the sale, by such warranty contained in said catalogue, in the absence of any agreement or understanding to the contrary.

[2] ARBITRATION — WARRANTY OF BULL AS BREEDER — EXISTENCE OF CONTROVERSY.—Where, following such sale, the buyer pays part of the purchase price in cash and gives a lease note to cover the balance, and such lease note recites that the seller neither makes nor is to make any warranty in regard to the animal sold, but such lease note is not read by the buyer prior to its execution, and thereafter said animal turns out to be a non-breeder, and a *bona fide* difference of opinion arises between the seller and the buyer as to their rights in the premises, a controversy exists that may be submitted to arbitration.

[3] ID. — EXECUTORY PROVISION — VOLUNTARY SUBMISSION — BINDING AWARD.—Where one of the conditions of the sale of said animal, as stated in the catalogue, was that controversies between the buyer and the seller should be adjusted by a committee to be appointed by the president of the auction company, such condition was not enforceable while it remained executory only, but when the buyer and the seller voluntarily submitted the controversy to arbitration in accordance with said condition, they were bound by the award, in the absence of fraud or mistake.

[4] ID.—AGREEMENT—FINDINGS—EVIDENCE.—In this action to enforce an award in favor of plaintiff in a common-law arbitration, there was sufficient evidence to support the finding that, on the day of the hearing before the arbitrators, the defendant agreed to submit the controversy to arbitration.

[5] ID.—SPECULATION AS TO AWARD—REFUSAL TO ACCEPT.—Where defendant knew that plaintiff claimed that the animal in question had been warranted to be a breeder, that it was not such, and that he was entitled to an adjustment of the matter, and defend-

---

1.  Advertisements of property offered at auction as affecting rights of purchaser, see note in 28 A. L. R. 1001.

2.  See 3 Cal. Jur. 30.

ant also knew that plaintiff had made a formal complaint to the president of the auction company, that the latter had appointed a committee of arbitrators to adjust the dispute, and that the members of the committee were present to take evidence and make an award, and, when plaintiff sought a compromise, defendant said he was perfectly willing to stand by the decision of the committee, and he appeared before the committee and presented his side of the controversy, defendant could not speculate upon the action of the arbitrators and then refuse to be bound by an adverse award.

[6] ID. — FORM — INTENT — EXPRESS AGREEMENT TO BE BOUND. — The form of the submission to arbitration is immaterial, so long as it appears from the acts of the parties that they intended to arbitrate, and that the decision of the arbitration should have the effect of an award; and it is not necessary that there should be an express agreement to abide by an award when made.

[7] CONTRACTS—ABROGATION BY ORAL AGREEMENT.—A written agreement may be abrogated by an oral contract, and in such a case section 1698 of the Civil Code has no application.

[8] ID.—MUTUAL RESCISSION—RESTORATION.—Upon a mutual rescission of a contract the law requires each party to restore whatever he has received under it.

[9] ARBITRATION—VERBAL SUBMISSION—EXECUTION.—That agreement to submit to arbitration having become executed upon the making of the award, the verbal submission was valid.

[10] ID. — SUBMISSION — AWARD — CONSTRUCTION — INTENT — PRESUMPTIONS.—Technical precision is not required either in a submission to arbitration or the award, but the submission is to be liberally construed so as to give effect to the intention of the parties, and every presumption is in favor of the award and, where there is doubt, the presumption is that all matters in dispute were intended to be decided; and in this action to enforce an award in a common-law arbitration, there was no merit in defendant's contention that the award covered matters not embraced in the contract of submission and was insufficient in form.

[11] ID.—SALE OF REGISTERED BULL—TERMS AND CONDITIONS—EXISTENCE OF CONTROVERSY—EVIDENCE.—In this action to enforce an award in favor of plaintiff in a common-law arbitration arising out of the sale at auction to plaintiff of a registered bull belonging to defendant, evidence relating to the auction sale and the terms and conditions under which the animal was sold and also relating to the circumstances surrounding the subsequent execu-

6.　See 3 Cal. Jur. 45.
7.　See 6 Cal. Jur. 375.
8.　See 6 Cal. Jur. 382; 6 R. C. L. 936.
10.　See 3 Cal. Jur. 66.

tion by plaintiff of a lease note to cover a part of the purchase price, was properly admitted for the purpose of showing that there was a real controversy between plaintiff and defendant, which they submitted to arbitration.

(1) 6 C. J., p. 827, n. 66, p. 828, n. 73. (2) 5 C. J., p. 27, n. 83, 85. (3) 5 C. J., p. 42, n. 12, p. 139, n. 12, 13; 13 C. J., p. 457, n. 16. (4) 5 C. J., p. 248, n. 81. (5) 5 C. J., p. 23, n. 47, p. 160, n. 66, p. 161, n. 67. (6) 5 C. J., p. 32, n. 33, p. 33, n. 39, p. 34, n. 45, p. 35, n. 46. (7) 13 C. J., p. 601, n. 28. (8) 13 C. J., p. 619, n. 41, p. 620, n. 52. (9) 5 C. J., p. 163, n. 87, p. 164, n. 93. (10) 5 C. J., p. 36, n. 55, p. 40, n. 94, p. 116, n. 73, p. 117, n. 87, p. 123, n. 77, p. 124, n. 81, 84, p. 127, n. 9. (11) 5 C. J., p. 241, n. 28.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Kauke for Appellant.

Lewis H. Smith and Ames Petersen for Respondent.

FINCH, P. J.—This action was brought to enforce an award in favor of plaintiff in a common-law arbitration. The plaintiff was given judgment in accordance with the award and the defendant has appealed.

Prior to the transactions involved in this case the defendant was the owner of a herd of registered cattle and for the last two years of that time the plaintiff was in full charge of the herd. The defendant employed the California Breeders' Sales and Pedigree Company to sell the cattle at public auction. The company printed and distributed a catalogue of the animals to be sold, giving their description and pedigree and stating the time and place and terms of the sale. The catalogue contained the following:

"The terms of this sale are cash. Responsible parties may arrange for time with owner, but such arrangements must be made before sale. . . . It is a condition of this sale that the buyer agrees to make any and all complaints in writing to the President of California Breeders' Sales and Pedigree Company, California, within 30 (thirty) days of the sale, that the president will appoint a committee of three to investigate and adjust the complaint, and that the

decision and adjustment by this committee shall be final with both buyer and seller. . . . The owners guarantee every animal sold to be exactly as represented. Every animal in this sale is guaranteed to be a breeder. . . . The sale will start promptly at 10 o'clock on Thursday, September 23, 1920.''

The sale was held at the time stated. At the opening of the sale the sales manager of the company announced ''that every animal in this sale was sold according to the terms and conditions printed in the front of the catalogue.'' Being desirous of purchasing a certain bull, Sir Pieterje Korndyke Ormsby described in the catalogue, the plaintiff arranged with defendant, prior to the sale, that if the former became the purchaser of the animal his promissory note was to be accepted in part payment of the purchase price thereof. Plaintiff made the highest bid for the bull and it was declared sold to him, by the auctioneer, for the sum of $3,200. Thereafter, on the same day, the plaintiff paid the defendant the sum of $1,500 and signed an instrument, referred to in the findings as a lease note, in form an agreement by the defendant to sell and by the plaintiff to buy the bull for $3,200, the sum of $1,500 to be paid in cash and the remainder of the purchase price to be paid in quarterly installments of $425 each, title to remain in the defendant until final payment. The contract contained the following clause: ''It' is hereby agreed that the party of the first part neither makes nor is to make any warranty in regard to said property, except to title.'' The instrument was not signed by defendant, but was delivered to him by the plaintiff. The instrument contains about ten folios. The plaintiff testified: ''I saw it in Mr. Phillips' house in Dixon when I signed it, but I didn't have time to read it over. Mr. Phillips was in a hurry to leave and I didn't have time to read it over. He said it was just a matter of form and it wouldn't be necessary.''

May 11, 1921, the plaintiff wrote the defendant to the effect that the bull was not a breeder and stated: ''This looks very much to me like there should be some adjustment made—according to the clause in your catalog which read 'every animal guaranteed to be a breeder.' '' May 25, 1921, plaintiff again wrote defendant, stating, among other things: ''I cannot well afford to have my money tied up in

an animal that has proven worthless and shall have to take other steps if necessary." June 2, 1921, the defendant wrote plaintiff, demanding payment of the installments then due and stating: "If there is any truth whatever in the representations which have been made to you, it is by reason of the way in which the animal has been kept and handled since you received him. At the time you took him you were thoroughly acquainted with him, and the fact is that at that time he was a breeder, and I feel certain he would have continued to be such had he been properly kept and handled, and that he is such now if properly handled. I fail to understand why, under all the circumstances, you should think there should be any adjustment of this matter other than the making of the payments on your contract as called for therein. By the contract itself it is specified that there is no warranty made by me except as to title. . . . I would suggest that you investigate the matter and put the . . . animal in the keeping of parties who will give him proper care and attention." June 20, 1921, the plaintiff wrote the defendant, saying: "I am willing to give him (the bull) a chance in another herd and under another man's care to demonstrate whether he is a breeder or not. I surely hope that he does come out all right as it would be to my advantage, but under the present conditions I do not feel justified in continuing the payments until he proves to be a breeder." The defendant replied: "I do not concede that you are entitled to defer the payments, or that, under the circumstances, you are to be relieved from same, or any part thereof. I, therefore, request that you do not let these unpaid amounts accumulate, but that, without further delay, you send me your check for the amounts now due."

February 14, 1922, plaintiff wrote the president of the California Breeders' Sales and Pedigree Company as follows: "In compliance with the conditions of the terms of sale of the Allana Farm Herd, dispersed in September, 1920, I wish to make complaint that the sire, Sir Pieterje Korndyke Ormsby, purchased by me from Mr. J. P. Phillips, owner of the Allana Farms Herd, has proved to be a non-breeder. . . . He was used in four different herds and letters from the owners of these herds show that they were unable to get any cows with calf to the service of this sire. In view of the conditions as stated above and additional

evidence I can furnish, I request that you, as President of the Calif. Breeders' Sales and Pedigree Co. appoint a committee to investigate and adjust this matter in accordance with the conditions of sale." The president of the company appointed "a committee of three to investigate and adjust the complaint" and the parties were duly notified of the time and place at which the committee would meet for that purpose. Both parties appeared at the time and place stated in the notice. The committee investigated and decided a controversy over a sale between other parties immediately before taking up that of the parties hereto.. The defendant testified that the committee decided that controversy "adversely to the buyer." The plaintiff testified: "While they were deciding on the first case I called Mr. Phillips to one side and asked him if he would care to make any proposition as to settlement before this went before the committee as if he were to continue in the pure breed business it would probably be better for us not to have it to come before the committee, and he said he was perfectly willing to stand by the decision of the committee." The defendant testified that he did not make such statement. Both parties appeared before the committee and presented evidence in support of their respective contentions. The committee then retired for deliberation and prepared and signed the following written award, addressed to the president of the company:

"We, the undersigned committee, appointed by you to decide the complaint, of J. E. Dugan against J. P. Phillips that the registered Holstein bull, Sir Pieterje Korndyke Ormsby, 176945, was at time of sale an intermittent breeder and since that time a non-breeder, report that we met at Tulare, Calif. on March 13, 1922, and after hearing the evidence of both J. E. Dugan and J. P. Phillips do decide as follows: That the evidence submitted would tend to prove that the bull has been a non-breeder since purchased by J. E. Dugan, and that J. E. Dugan return the bull Sir Pieterje Korndyke Ormsby 176945 H.F.H.B. to J. P. Phillips who shall return to J. E. Dugan whatever amount of the original purchase price of $3200 as said Dugan has already paid and shall also return to said J. E. Dugan the lease note given as balance of settlement. Said bull to be

returned to J. P. Phillips by J. E. Dugan within thirty-(30) days of this date.''

The committee then returned to the room in which the hearing had been conducted and the decision was thereupon read in the presence of the committee and of both parties to the controversy. Within the time provided in the award the plaintiff returned the bull to defendant and the latter received it, with the understanding between the parties that defendant's rights should not be prejudiced by his acceptance of the animal. The defendant refused to comply with the terms of the award and thereafter this action was commenced.

The court found the facts relative to the sale of the animal in accordance with the foregoing statement thereof; ''that on or about the 26th day of March, 1921, and continuously after said date there existed a controversy between plaintiff and defendant,'' the former contending that the latter had warranted the bull to be a breeder and that the animal was not such, and the latter contending that he had not so warranted the animal, but that in fact it was a breeder at the time of the sale; that on the day the committee met to adjust the controversy ''the plaintiff and defendant agreed with each other that the defendant had warranted and guaranteed the bull to be a breeder, and the plaintiff and defendant agreed with each other to submit to a committee of three arbitrators, composed of W. J. Higdon, F. L. Morris and Alex Whaley, the determination of the question as to whether or not the said animal was a breeder as warranted and guaranteed by the defendant, as aforesaid, and to authorize the said committee to decide what disposition should be made of the said animal, and what disposition should be made of the said lease note, and what disposition should be made of the sum . . . paid by plaintiff to the defendant.'' The court found the facts relating to the arbitration proceeding and the award and the subsequent acts of the parties as herein stated. Plaintiff was given judgment in accordance with the terms of the award.

The finding that, on the day of the hearing before the arbitration committee, the defendant agreed that he had warranted the bull to be a breeder is supported only by such inference as may arise from defendant's agreement to

submit the controversy between him and the plaintiff to arbitration. Such agreement implies either that the defendant had made the warranty or that he intended to submit to the arbitrators the question of whether he had made it, otherwise there would have been nothing to arbitrate. The finding, however, is not necessary to the validity of the judgment. There was a substantial controversy between the parties, which they submitted to the arbitrators. By the fall of the auctioneer's hammer the sale of the bull to the plaintiff became complete. (Civ. Code, secs. 1793, 1794.) The auctioneer's memorandum of the sale bound "both the parties in the same manner as if made by themselves." (Civ. Code, sec. 1798.) The terms of payment had been arranged between the parties prior to the sale. Whether in such arrangement any agreement was made as to warranty does not appear. Plaintiff testified that "any understanding" between them prior to the execution of the lease note was "merely verbal." He was asked by his counsel, "What verbal understanding before that was there?" Defendant's objection to the question was sustained. [1] In the absence of any agreement or understanding to the contrary, the defendant became bound, upon the entry of the auctioneer's memorandum of the sale, by the warranty contained in the catalogue that "every animal in this sale is guaranteed to be a breeder." If the apparent release of defendant from such warranty by the terms of the lease note was given without consideration, it may be seriously doubted whether such terms are binding on plaintiff. (*Western Lith. Co.* v. *Vanomar Producers,* 185 Cal. 366, 369 [197 Pac. 103].) [2] The question before the trial court was not whether the defendant had warranted the animal to be a breeder, but whether there existed a controversy between the parties relating to the matters submitted by them to arbitration. "It is sufficient if there is a *bona fide* difference of opinion as to the rights of the parties." (5 C. J. 27.) The plaintiff testified that he did not read the lease note prior to its execution. He could have maintained an action for its reformation if the clause relating to warranty was inserted through fraud or mistake.

[3] The condition of the sale, as stated in the catalogue, that controversies between the buyer and the seller should be adjusted by a committee to be appointed by the president

of the company was not enforceable while it remained executory only. (*Blodgett Co.* v. *Bebe Co.*, 190 Cal. 665, 670 [26 A. L. R. 1070, 214 Pac. 38].) But if the parties to such an agreement voluntarily submit a controversy arising thereunder to arbitration in accordance with the provisions of the contract, they will be bound by the award, in the absence of fraud or mistake. In a recent case, the supreme court of the United States said: "An agreement for arbitration is valid, even if it provides for the determination of liability. . . . If executed,—that is, if the award has been made,—effect will be given to the award in any appropriate proceeding at law or in equity." (*Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 68 L. Ed. 582, 44 Sup. Ct. Rep. 274.) "It has been held that an agreement in an executory contract to refer all matters of dispute that may arise under the contract to arbitration will not oust the courts of jurisdiction, . . . and, when invoked for that purpose, will be held void; yet, if the parties have, before suit is instituted, proceeded with the arbitration under the contract, and an award, in the absence of fraud or mistake, has been made, suit must be on the award, and not on the contract." (*Florida Athletic Club* v. *Hope Lumber Co.*, 18 Tex. Civ. App. 161 [44 S. W. 10]; Elliott on Contracts, sec. 2941.)

[4] There is sufficient evidence to support the finding that, on the day of the hearing before the arbitrators, the defendant agreed to submit the controversy to arbitration. [5] The defendant then knew, from the correspondence between the parties, that the plaintiff claimed that the bull had been warranted to be a breeder, that it was not such, and that he was entitled to an adjustment of the matter. The defendant also knew that the plaintiff had made formal complaint to the president of the company, that the latter had appointed a committee of arbitrators to adjust the dispute, and that the members of the committee were there present to take evidence and make an award. Under such circumstances, when the plaintiff sought a compromise, the defendant, according to plaintiff's testimony, "said he was perfectly willing to stand by the decision of the committee." He appeared before the committee and presented his side of the controversy. Had the award been in his favor he

doubtless would have insisted that the plaintiff was bound by it. A party cannot be allowed thus to speculate upon the action of the arbitrators and then refuse to be bound by an adverse award. "Participation in the arbitration proceedings is of itself evidence of the party's prior agreement to submit." (5 C. J. 23.) [6] "The form of the submission is immaterial. It is sufficient if it appears from the acts of the parties that they intended to arbitrate, and that the decision of the arbitrators should have the effect of an award." (5 C. J. 32.) "It is not necessary that there should be an express agreement to abide by an award when made; . . . the law implies such an agreement from the very fact of the submission." (5 C. J. 33; *Robinson v. Templar Lodge, I. O. O. F.*, 97 Cal. 62, 65 [31 Pac. 609].)

Appellant contends that a verbal submission is invalid, citing 5 Corpus Juris, page 34, where it is said: "A verbal submission is valid at common law in all cases where the subject matter is such that a verbal agreement directly between the parties, in the terms of the award, would prevail. But where, from the subject matter of the arbitration, a writing is necessary to pass the right to the thing in demand, or to defeat or destroy the demand, the submission must be in writing." Appellant also relies upon the provisions of section 1698 of the Civil Code reading: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." An agreement between the parties in the terms of the award involved in this case would amount to an abandonment or rescission of the contract of sale. [7] It has been held many times that a written agreement may be abrogated by an oral contract and that in such a case section 1698 has no application. (*McClure* v. *Alberti*, 190 Cal. 348 [212 Pac. 204]; *Pearsall* v. *Henry*, 153 Cal. 314 [95 Pac. 154]; *Guidery* v. *Green*, 95 Cal. 630 [30 Pac. 786]; *Producers Fruit Co.* v. *Goddard*, 75 Cal. App. 737 [243 Pac. 686]; *Haberman* v. *Sawall*, 72 Cal. App. 576 [237 Pac. 776]; *Hooke* v. *Great Western Lumber Co.*, 54 Cal. App. 681 [202 Pac. 492]; *Arsenio* v. *Smith*, 50 Cal. App. 173 [194 Pac. 756]; *Tompkins* v. *Davidow*, 27 Cal. App. 327 [149 Pac. 788]; *Credit C. Bureau* v. *Hochbann*, 25 Cal. App. 546 [144

Pac. 315]; *Sarnighausen* v. *Scannell*, 11 Cal. App. 652 [106 Pac. 117]; *Proud* v. *Strain*, 11 Cal. App. 74 [103 Pac. 949].) **[8]** Upon a mutual rescission of a contract the law requires each party to restore whatever he has received under it. (*Green* v. *Darling*, 73 Cal. App. 700 [239 Pac. 70]; *Hooke* v. *Great Western Lumber Co., supra.*) **[9]** The agreement to submit to arbitration became executed upon the making of the award. (*Red Cross Line* v. *Atlantic Fruit Co., supra.*)

**[10]** It is contended that the award covers matters not embraced in the contract of submission and is insufficient in form. The award does not go beyond the matters in controversy, and well understood by the parties to be in controversy. The defendant was a member of the California Breeders' Sales and Pedigree Company and it may be inferred that he was familiar with the scope of arbitration proceedings conducted under its direction. "Where there is doubt, the presumption is that all matters in dispute were intended to be decided." (Elliott on Contracts, sec. 2949.) Technical precision is not required either in the submission or the award. (5 C. J. 36.) The submission and the award will be construed "with reference to, and in view of, all the surrounding facts and circumstances." (5 C. J. 124.) Every reasonable presumption is in favor of the award. (5 C. J. 123.) "Submissions are to be liberally construed so as to give effect to the intentions of the parties." (5 C. J. 40.) "The arbitrators were not required to find facts nor to give reasons for their award." (*In re Connor*, 128 Cal. 279 [60 Pac. 862].) "Misrecitals of facts not required to be recited may be disregarded." (5 C. J. 117.) Tested by the foregoing rules, appellant's contentions are not sustained.

**[11]** It is contended that the court erred in admitting evidence relating to the auction sale and the making of the lease note. Such evidence was properly admitted for the purpose of showing that there was a real controversy between the parties, which they submitted to arbitration. Appellant urges that there are many inconsistencies in the findings, but a careful examination and comparison thereof fails to disclose any inconsistency. It is true that some of the findings are outside the issues, but such findings are

unnecessary, because the other findings fully support the judgment.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.