**MAY v. RICE et al.**

No. 14097.

United States District Court,
S. D. California, C. D.

Jan. 11, 1954.

---

Bodle & Landye, Los Angeles, Cal., by Louis R. Stein, Los Angeles, Cal., for plaintiff.

Marvin A. Freeman, Beverly Hills, Cal., for defendants.

TOLIN, District Judge.

This case is before the Court by reason of diversity of citizenship. Two causes of action are pleaded. The first is entitled "Specific Performance" and the second is on action for rescission of a purchase and sale of an oil royalty be-

cause of fraud allegedly practiced upon the plaintiff by defendants.

▪ There is no showing of fraud. Judgment must, accordingly, be for defendants upon the Second Cause of Action.

The First Cause of Action presents a different problem. It is cast in the form of an action for specific performance of a contract. Defendants sold plaintiff an oil royalty. Although there was no fraud, plaintiff very shortly expressed dissatisfaction with his purchase and threatened defendants with legal action which, in the light of all the conversations and correspondence, defendants might well have believed to have been either threatened action for rescission based on breach of a warranty, an action for damages on the theory of fraud, or an action for relief based upon a theory of failure of consideration. The evidence at the trial does not show that any of such causes of action actually existed but it does show that although an exact theory was not definitely articulated, plaintiff did have an intent to pursue some one or more of the theories by filing an action at law or in equity against defendants, and defendants understood that such a lawsuit was a very real prospect. In the light of this situation, defendant Rice addressed a letter to plaintiff which contained these words:

"However, doctor, if at the end of the next six months you should be dissatisfied I shall arrange to take over your interest at your purchase price."

This was an offer to compromise a genuine dispute by taking back the thing plaintiff had bought from defendants and which he claimed was defective. Plaintiff replied in part:

" * * * I shall avail myself of your offer of December 19, 1950 to purchase from me at the end of six months my royalty interest in the Rankin royalty at the price which I have paid for it, $11,500.00."

That was an acceptance of the offer. Defendant Rice thereon wrote back to plaintiff:

"Please be advised that I am making arrangements to take over your interest in the Rankin royalty at the end of the six-month period as stipulated in my letter of December 19, 1950."

After the six-month period, defendant Rice sent plaintiff a check for $1,000.00, and a few weeks later mailed him a second check for $500.00. These checks were returned unpresented, it being plaintiff's attitude that there was an agreement to take back his royalty interest at $11,500.00 and that installment payments were not contemplated in that agreement. Defendants explained to plaintiff that they had become involved in certain complications in the operation of their business and could not pay in a single sum but would work out the repurchase on an installment basis. This was merely the explanation of a defaulting party to an agreement and in no way altered the legal obligations.

It is apparent from the whole evidence that the contract now sued upon with a present prayer for specific performance was in fact a contract to rescind a transaction which one of the parties claimed was subject to rescission because of either fraud or failure of consideration.

The Court finds that the agreement was in fact one to rescind and that it is a valid agreement.

▪ In their Answer, defendants, in addition to denial of fraud, allege:

"That the oil and mineral interest security referred to in plaintiff's complaint was sold to plaintiff pursuant to authorization contained in permit from the Corporation Commissioner of the State of California, dated November 14, 1950, bearing File No. 99744 LA.

"That said permit provides in part as follows, to wit:

" 'This permit is issued upon each of the following conditions:

" '(a) That none of the securities authorized to be sold and issued under Paragraph 1 hereof shall be sold or issued unless and until applicant

first shall have selected an escrow holder and said escrow holder shall have been first approved in writing by the Commissioner of Corporations; that when issued the securities may be forthwith recorded with the County Recorder of the county in which is situated the property to which the securities relate, and a duplicate original of said securities may be filed in accordance with any applicable state or federal regulation; that said securities shall be delivered to and deposited with said escrow holder immediately thereafter, to be held in escrow pending the further written order of said Commissioner; that the receipt of said escrow holder for said securities shall be filed with said Commissioner; and that the owner or person entitled to said securities shall not consummate a sale, assignment, or transfer of said securities or any interest therein, or receive any consideration therefor, until the written consent or permit of said Commissioner shall have been obtained so to do.' * * *."

Defendants contend non-compliance with the permit and, further, that the arrangement concerns the sale of a security within the meaning of the California Corporate Securities Law. It is contended that there was an agreed sale which could not be valid unless there be complete compliance with the California Corporations Code, Sec. 25508. Defendants say that even if the sale not be governed by the original permit, the law required that a permit be sought and obtained. The California Corporate Securities Act, once known popularly as the Blue Sky Law, was adopted to protect purchasers from fraud and to place a proper State regulation into operation with respect to sales by promoters of not only corporate securities but oil royalty interests of the nature involved in this case. When parties holding a valid permit sell such an oil royalty through a proper escrow, and there is thereafter a claim by the purchaser that the sale was either fraudulent or otherwise subject to legal or equitable action to set it aside, and if the parties then resolve that dispute and agree to rescind, the rescission accomplishes no more than a court could enforce if a court were to find the dissatisfaction with the sale to be a valid reason to enforce rescission by decree. The purpose of preventing fraud upon purchasers, which underlies the entire scheme of enforcement of the Act, would not be brought into play in such a case because the disputants would have settled it themselves. The parties did no more than agree to rescind, thereby resolving by settlement that which would otherwise be left to litigation. That agreement is valid.

■■ Defendants rely heavily upon the lack of permit by plaintiff to transfer the securities although it simply be a transfer back from one who was but recently the transferee through an escrow and under a permit. Although the Court views and treats the transaction as an agreed rescission under California Corporations Code, Sec. 25152, a sale by an owner of the securities who disposes of the property for his own account and not for the benefit of the issuer, need not have the prior approval or issuance of a permit by the Commission. It was not the intent of the Act to enforce such regulations upon private individuals who contemplate sales for their own personal accounts. People v. Pace, 73 Cal.App. 548, 248 P. 1089; Pollak v. Staunton, 210 Cal. 656, 293 P. 26.

The California Supreme Court said, in People v. Murphy, 17 Cal.App.2d 575, at page 593, 62 P.2d 592, 601:

"The challenged subdivision of the act makes it clear that the inhibition of selling securities without a license does not apply to *a bona fide owner of stock, who sells his own property for his personal benefit. * * *"* (Emphasis in quoted material.)

Thus, if the Court incorrectly interpret the facts as spelling a rescission,

and if they instead actually add up to a sale, it is not the kind of sale which requires a permit and escrow.

Sec. 196, 12 Cal.Jur.2d, states, at pp. 413–414: "Rescission means not only the annulment or abrogation of the contract, but the placing of the parties in statu quo. (Citing case) It implies restoration to the same situation and the same terms as existed when the contract was made, and requires the *surrender* of any consideration or advantage secured by either party, (Citing cases) or an offer to restore anything received under the contract. (Citing cases) This is also the general rule as regards a mutual rescission. (Citing cases) * * *." (Emphasis supplied.)

See also, Tatterson v. Kehrlien, 88 Cal.App. 34, at page 48, 263 P. 285; Lobdell v. Miller, 114 Cal.App.2d 328, 250 P.2d 357; and Dugan v. Phillips, 77 Cal. App. 268, 246 P. 566.

The majority of cases treating rescission speak of a "restoration" of the consideration. No language in the Act itself mentions "restoration". The Act speaks of a "sale". *Webster's International Dictionary of the English Language* (1925 Edition) Page 818, defines "restore" as:

"4. To bring back to, or put back into, the former or original state; * * *."

Even if the agreement be construed as an agreement for the sale of an oil royalty, the agreement is valid and enforceable because it is an agreement for sale by a natural person owning securities of which he is not the issuer or underwriter and the sale would be for his own account. Under the authority referred to, he need not procure a permit from the Commissioner of Corporations. See also, Smith v. Randall, 51 Cal.App. 2d 195, 124 P.2d 334.

It has been suggested that the agreement must be governed by Pennsylvania law instead of the law of California. However, there would not be any difference in the result for the statutes of Pennsylvania are in harmony with the California law as above stated. See 70 Purdon's Pennsylvania Statutes Annotated, §§ 31 and 32, which include the Pennsylvania Securities Act of June 24, 1939, as re-enacted July 10, 1941. Section 32 in Subdivision (3) of Article (f) states:

"Isolated transactions in which securities are sold by the owner thereof or by his agent for the owner's account, such sales not being made in the course of repeated and successive transactions of a like character by such owner, or on his account by such agent, and such owner or agent not being the underwriter of such securities."

do not require a permit.

This language is so similar to the California statute that there is no need to determine whether the contract was made in one State or the other. California Corporations Code, Sec. 25152, provides:

"*Sale by owner.* Except as expressly provided in this division, the Corporate Securities Law does not apply to the sale of securities when (a) made by or on behalf of a vendor not the issuer or underwriter thereof who, being a bona fide owner of the securities, disposes of his own property for his own account, and (b) the sale is not made, directly or indirectly, for the benefit of the issuer or an underwriter of the security, or for the direct or indirect promotion of any scheme or enterprise with the intent of violating or evading any provision of the Corporate Securities Law."

Counsel for plaintiff will prepare Findings of Fact, Conclusions of Law, and Judgment which will find for the defendants upon the Cause of Action for fraud; and as to the Cause of Action denominated "Specific Performance", will direct the restoration by plaintiff to defendants

of the oil royalty described in the Complaint and the restoration by the defendants to the plaintiff of $11,500.00, together with interest thereon from the date of the agreed rescission. Plaintiff will also pay over to defendants all sums which he has received upon the oil royalty together with like interest from the respective dates of the receipts of the several payments.