Filed 9/20/22 ParPro Technologies v. Rogerson Kratos Corp. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PARPRO TECHNOLOGIES, INC., | |
| Plaintiff and Respondent, | G060176 |
| v. | (Super. Ct. No. 30-2019-01101416) |
| ROGERSON KRATOS CORPORATION, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment and order of the Superior Court of Orange County, Charles Margines, Judge. Affirmed.

Small Law, William F. Small and Kelly Ann Tran for Defendant and Appellant.

Solomon Ward Seidenwurm & Smith, Daniel E. Gardenswartz and Matthew T. Arvizu for Plaintiff and Respondent.

## INTRODUCTION

Rogerson Kratos Corporation (Rogerson) appeals from an order confirming an arbitration award and from the ensuing judgment in favor of ParPro Technologies, Inc. (ParPro), on the ground that Rogerson did not consent to arbitration. Rogerson maintains that consent to arbitration was based on a provision in ParPro's terms and conditions, which Rogerson never signed. When it opposed ParPro's petition to confirm the arbitration award, it also asked the court to vacate the award or dismiss the petition on the same ground.

We affirm the order denying the motion to vacate the arbitration award and the judgment. Because both ParPro and Rogerson are merchants, the California Uniform Commercial Code (Commercial Code) governs their contractual dealings. The code provides exceptions to common-law contract rules that would otherwise apply and supports the formation of a contract in this case. Even more importantly, however, Rogerson fully participated in the underlying arbitration without ever objecting that it did not consent to arbitrate. It is now estopped from arguing lack of consent.

As for Rogerson's motion to vacate, it was filed too late, and the trial court did not have jurisdiction to hear it. Rogerson had no explanation for its tardiness, and we cannot find the court abused its discretion in finding no good cause to extend the time to respond.

## FACTS

We take these facts from the arbitrator's award:

Beginning in early 2016, Rogerson placed orders with ParPro to manufacture and procure aerospace electronics. The routine appears to have been that Rogerson would tell ParPro what it wanted, ParPro would issue a written quote, and

Rogerson would then send a purchase order.[1] The relevant quotes and purchase orders were exhibits at the arbitration. We do not have any purchase orders in the record. On November 1, 2018, the parties executed a memorandum of agreement (MOA), after Rogerson fell behind on its payments. The MOA allowed Rogerson to pay a past due receivable of more than $400,000 in installments, constituting the amount owing on shipments of goods that Rogerson had already received. Pursuant to the MOA, Rogerson paid down the amount owing to $165,473. Then it stopped making payments.

During this time, Rogerson continued to order goods from ParPro, and ParPro continued to fulfill the orders. When Rogerson refused to pay for these as well, ParPro was left with $89,000 in excess inventory and $85,000 in work in progress, none of which it could sell to other customers. The total amount owing, which Rogerson did not dispute, was $340,308.

The record contains a document entitled ParPro "Standard Terms and Conditions." The document appears to be a form one, and it does not mention Rogerson. The second page of the document in the record includes an arbitration provision and an attorney fee provision. It also has a signature block, which, in the document in the record, is blank. The last paragraph provides, "All purchases are subject to all the terms and conditions set forth above, unless otherwise agree [*sic*] by both parties in a written agreement signed by an officer, director or managing agent for both parties."

ParPro filed a request for arbitration with JAMS in August 2019. There was a preliminary hearing on January 8, 2020, with the JAMS arbitrator. Rogerson was not represented by counsel at this hearing; instead Rogerson's CFO appeared to represent it. The preliminary hearing covered several housekeeping matters, such as discovery and bifurcation. The record of the hearing also recited that "the parties" had appointed an

---

[1] How Rogerson conveyed its requests to ParPro was not specified, but given that the subject matter was aerospace electronics, it is reasonable to infer that the requests were in writing. We have no examples of any requests.

arbitrator and "the parties" are parties to ParPro terms and conditions, which included an arbitration clause and an attorney fee clause. No objection by Rogerson's representative to any aspect of the arbitration is recorded.[2]

The arbitration hearing took place on April 13, 2020. The arbitrator noted that "[a]t the preliminary hearing, [Rogerson] agreed, and the Arbitrator ordered, that [Rogerson] would have until January 15, 2020, to file its Answer." Rogerson did not file an answer, and the arbitrator deemed it to have denied the claims.

ParPro was represented by counsel, and Rogerson appeared again through its CFO. Three witnesses testified for ParPro. Rogerson did not offer any witnesses, but the CFO made an opening and a closing statement and cross-examined ParPro's witnesses.

The arbitrator awarded ParPro $165,473 for breach of the MOA, $174,834 for nonpayment of the purchase orders, $65,234 in interest, and $50,342 in attorney fees and costs, for a total award of $455,885. The arbitration award was served on May 8, 2020.

ParPro filed its petition to confirm the arbitration award on May 26, 2020. Rogerson filed an opposition to the petition on December 1, 2020, and a supplemental opposition on January 13, 2021. The oppositions included requests to vacate the award.[3]

The court held a hearing on the petition and the oppositions on January 27, 2021. The court confirmed the award and held it could not rule on Rogerson's request to

___

[2] We grant ParPro's request to take judicial notice of the record of the January 2020 preliminary hearing. The JAMS rules, for which ParPro also requests judicial notice, are not necessary to the resolution of this appeal, and the request for judicial notice of that document is denied. (See *Michaels v. State Personnel Bd.* (2022) 76 Cal.App.5th 560, 575, fn. 7.)

[3] Rogerson's second opposition included for the first time an argument that the court should *dismiss* the petition under Code of Civil Procedure section 1285.2. On appeal, it argues that the petition should have been dismissed pursuant to Code of Civil Procedure section 1287.2, which provides, "The court shall dismiss the proceeding under this chapter as to any person named as a respondent if the court determines that such person was not bound by the arbitration award and was not a party to the arbitration." "[T]he . . . alternative of dismissal is available only after the court determines that such person was not bound by the arbitration award and was not a party to the arbitration. [Citations.] Obviously, appellant here, having admitted submission of the dispute, is not such a person." (*Horn v. Gurewitz* (1968) 261 Cal.App.2d 255, 260.)

4

vacate the award because it was untimely. It also refused to order an extension of time under Code of Civil Procedure section 1290.6 for good cause because Rogerson had not shown any good cause for its late filing. It entered judgment in ParPro's favor for the amount of the award.

## DISCUSSION

On appeal, Rogerson makes two main arguments. First it argues the judgment must be reversed because Rogerson never agreed to arbitrate ParPro's claims against it. Second, the court should have granted an extension of time for good cause to file the opposition under Code of Civil Procedure section 1290.6, instead of refusing to rule because of untimeliness.

**I.        Agreement to Arbitrate**

Rogerson contends it never consented to or signed an agreement to arbitrate, so the arbitrator never had jurisdiction over it. The arbitrator therefore exceeded her powers by adjudicating the dispute.

There are two categories of agreements at issue here. First is the MOA, a copy of which is not in the record. We therefore do not know whether it included an arbitration provision. Second are the quotes/purchase orders. We have an exemplar of the terms and conditions, and that exemplar is not signed. From the arbitrator's comments, we infer that the terms and conditions accompanied each quote.

ParPro and Rogerson are both merchants, and so the Commercial Code governs their contractual relationship. Commercial Code section 2204, subdivision (1), provides: "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." It is undisputed that ParPro and Rogerson had contracts for the sale of goods. The question before us is what the terms of the contract were – specifically, did it include arbitration and attorney fee provisions?

5

The trial court relied on Commercial Code section 2207, which provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) The offer expressly limits acceptance to the terms of the offer;

"(b) They materially alter it; or

"(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code."[4]

As prior courts have recognized, this code section was enacted to reject the common-law rule of "mirror-image" offer and acceptance. Under the common law, an acceptance must precisely mirror the offer; otherwise the "acceptance" was a counter-offer, and no contract was formed. (See *Apablasa v. Merritt & Co.* (1959) 176 Cal.App.2d 719, 726 ["[T]erms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract [citations] and a qualified acceptance amounts to a new proposal or counteroffer putting an end to the original offer."]; Civ. Code, § 1588 [qualified acceptance is new proposal].)

---

[4] Commercial Code section 2207 must be read in conjunction with section 2206, subdivision (1)(a), which provides: "(1) Unless otherwise unambiguously indicated by the language or circumstances [¶] (a) An offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstance[s]."

"In place of the mirror-image rule, [Commercial Code] section 2207 inquires as to whether the parties intended to complete an agreement: 'Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract.' [Citation.] If the parties intend to contract, but the terms of their offer and acceptance differ, section 2207 authorizes a court to determine which terms are part of the contract, either by reference to the parties' own dealings (see [Cal. U. Com. Code,] § 2207, subds. (1), (2)), or by reference to other provisions of the code. (See [Cal. U. Com. Code,] § 2207, subd. (3).)" (*Steiner v. Mobil Oil Corp*. (1977) 20 Cal.3d 90, 99-100.)

*Toal v. Tardif* (2009) 178 Cal.App.4th 1208 (*Toal*), on which Rogerson heavily relies, is inapposite. The primary issue in that case was whether an attorney had the authority to bind a client to arbitrate. The court held that a client must expressly authorize counsel to agree to arbitrate (e.g., by signature) or the client must ratify the agreement. (*Id.* at p. 1222.) The court also held that merely allowing the arbitration to proceed to an award does not constitute client ratification. (*Ibid.*)

In this case, however, there is no issue regarding an attorney's authority to consent to arbitration. Indeed, Rogerson's thoroughgoing abjuration of the assistance of counsel throughout this transaction rather conclusively removes this case from the ambit of *Toal*. Moreover, unlike the court in *Toal* (*Toal, supra,* 178 Cal.App.4th at p. 1223), the court in this case did make a finding regarding consent to arbitrate. It found that Rogerson's conduct supplied the element of consent. There is no need, as there was in *Toal,* to send the matter back to the trial court for a hearing on this issue. (*Ibid.*)

On this record, we conclude that Rogerson accepted ParPro's terms and conditions as they applied to the quotes by making a definite and seasonable expression of acceptance, i.e., by sending purchase orders pursuant to ParPro's quotes. We do not have an exemplar of Rogerson's purchase order, so we do not know whether the purchase orders "state[d] terms additional to or different from those offered or agreed upon" in ParPro's quotes. No one ever said that they did, and Rogerson does not point us to any

7

evidence that the purchase orders contained different terms and conditions. It is the appellant's duty to provide an adequate record to support its claims of error. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

To sum up, there is no evidence in the record that the MOA did or did not have an arbitration provision. The quotes were evidently accompanied by the terms and conditions, including arbitration and attorney fee provisions, and there is no evidence of additional or different terms that would preclude a finding of acceptance by performance on Rogerson's part.

Our conclusion that the arbitrator had jurisdiction over Rogerson, notwithstanding the lack of a signature on a written arbitration agreement, does not rest solely on the Commercial Code. Overwhelming evidence in the record supports the trial court's finding that Rogerson did not register any objection to arbitration until it filed its opposition to ParPro's petition to confirm the award. Neither the record of the preliminary hearing with the arbitrator nor the award itself records any such objection. On the contrary, the arbitrator's comments that Rogerson's CFO represented it at the hearing and that, while Rogerson did not offer any witnesses itself, the CFO made opening and closing statements and cross-examined witnesses establish that Rogerson participated fully in the proceeding.[5] Rogerson is therefore estopped from denying the arbitrator's authority to decide the dispute.

"'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon

---

[5] In its oppositions to ParPro's petition to confirm, Rogerson stated that it "repeatedly insisted that it never agreed to arbitrate its claims with ParPro[.]" There is no evidence in the record of even one prepetition insistence, let alone repeated ones.

The CFO, who represented Rogerson at the arbitration hearing, stated in an opposition declaration that he attended the April 2020 hearing "with the intent of reiterating Rogerson's lack of consent to arbitration." As stated above, there is no evidence that this lack of consent was ever expressed once, and it appears from the record that the CFO's "intent" was never made manifest to anyone else.

8

such belief to his detriment.  The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'  [Citation.]"  (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279.)  Appearing at and participating in an arbitration without objection up to the point of submitting the matter for decision estops a party from claiming it did not consent to arbitration.  (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 387-388*; Cabrera v. Plager* (1987) 195 Cal.App.3d 606, 612, fn. 8; *Dugan v. Phillips* (1926) 77 Cal.App. 268, 276-277 ["Had the award been in [defendant's] favor he doubtless would have insisted that the plaintiff was bound by it.  A party cannot be allowed thus to speculate upon the action of the arbitrators and then refuse to be bound by an adverse award."].)

If Rogerson had ever objected to the arbitrator that it did not consent to arbitration, it defies belief that the arbitrator would not have recorded this objection somewhere.[6]  Both the record of the preliminary hearing and the award itself reflect a process that unfolded seamlessly, without any hitches over jurisdiction.  Likewise, Rogerson points to nothing in the record indicating it ever expressed an objection to arbitration to opposing counsel on any grounds.  The attorneys who represented ParPro during the arbitration proceedings confirmed that Rogerson never at any point raised lack of jurisdiction, and the court clearly believed them.

It would be highly inequitable to allow Rogerson to participate fully in the arbitration and to present its case to the arbitrator and then, when the award goes against it, to maintain that it never consented to arbitration.  There is not a whisper of evidence in

---

[6]   Rogerson stated in its second opposition that because it "disputed the arbitrator's jurisdiction, it did not file an answer[.]"  Rogerson did not file an answer, but it never indicated that it did not do so because it disputed jurisdiction.

this record that Rogerson ever objected to arbitration until it filed its opposition to ParPro's petition to confirm the award. We conclude Rogerson is estopped to maintain it did not consent to arbitration.

**II.        Motion to Vacate Award**

A motion to vacate an arbitration award may take two forms. It can be included in an opposition to a petition to confirm an award. (Code Civ. Proc., § 1285.2.) Or it can be a separate, stand-alone motion. (Code Civ. Proc., § 1285.) If it is filed as part of an opposition, it must be filed within 10 days of the service of the petition. (Code Civ. Proc., § 1290.6.) A stand-alone motion must be filed no later than 100 days after service of a signed copy of the arbitration award itself. (Code Civ. Proc., § 1288.) Even if the request to vacate is included in an opposition to a petition to confirm, it must still be filed within the 100-day deadline.[7]

The petition to confirm the award was filed on May 26, 2020. Rogerson did not file its first opposition, which included a request to vacate, until December 1, 2020, well outside the 10-day window. It was also well outside the 100-day window. The court therefore lacked jurisdiction to consider it. (See *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 93-94.)

Rogerson argues here, as it did in its even tardier supplemental opposition, filed in January 2021, that the court should have retroactively ordered the time for the opposition to be extended for good cause. (Code Civ. Proc., § 1290.6.) The trial court refused to do so because Rogerson had not shown any evidence of a good cause for failing to file its opposition on time.

"Where the standard requires 'good cause' only, it has been ""equated to a good reason for a party's failure to perform that specific requirement [of the statute] from

---

[7]        This means that if the petitioner does not file a petition to confirm the award soon enough, the respondent *must* file a separate motion in order to meet the 100-day deadline. The winner has four years to file a petition to confirm (Code Civ. Proc., § 1288), but the loser must file within 100 days or lose the chance to vacate. (See *Rivera v. Shivers, supra,* 54 Cal.App.5th at p. 93.)

which he seeks to be excused.'"' [Citation.] In the context of a motion to extend time . . ., we should pay special deference to the trial court's view, which was informed by its personal interactions with counsel. Accordingly, a trial court's finding of 'good cause' is generally reviewed deferentially, solely for abuse of discretion." (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 327.)

In this case, we cannot find that the trial court abused its discretion in refusing to grant a retroactive blessing of Rogerson's untimely filing. As the court noted, Rogerson did not explain why it was late. Its good cause argument was the same as its vacation argument: it did not consent to arbitration.[8] It gave no reason for waiting almost seven months before filing its request to vacate. The reasons it gives now, on appeal, we cannot consider because they were not raised first in the trial court. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

---

[8] Since the trial court found that Rogerson had consented, through conduct, to arbitration, an extension of time to argue it had not consented would have availed it nothing.

## DISPOSITION

The judgment and order denying the motion to vacate are affirmed. The request of Respondent ParPro Technologies, Inc., for judicial notice of the record of the arbitration preliminary hearing is granted; the request for judicial notice of the JAMS rules is denied. Respondent is to recover its costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.